NATIONAL BUSINESS CONFERENCE EMPLOYEE BENEFIT ASSOCIATION et al., Plaintiffs,

v.

Herbert W. ANDERSON, Insurance Commissioner for the State of Iowa, Defendant.

Civ. No. 77–363–1.

United States District Court, S. D. Iowa, C. D.

Dec. 22, 1977.

Joseph S. Brick, Keith E. Uhl, Robert Scism, Des Moines, Iowa, Stephen C. Klein, Weston L. Johnson, Barger & Wolen, Los Angeles, Cal., for plaintiffs.

Richard C. Turner, Atty. Gen., William D. Hager, Tony Schrader, Bruce W. Foudree, Asst. Atty. Gen., Des Moines, Iowa, for State of Iowa.

Curtis Yocom, Jr., Asst. Atty. Gen., Des Moines, Iowa, for Iowa Ins. Dept.

## ORDER

STUART, Chief Judge.

On December 16, 1977, plaintiffs' Motion for Preliminary Injunction came on for hearing pursuant to Order of Court. Plaintiffs appeared by their attorneys Weston L. Johnson, Robert B. Scism and Keith E. Uhl. Defendant appeared by Assistant Attorneys General for the State of Iowa, William D. Hager and Tony Schrader.

On November 15, 1977, Herbert W. Anderson, Commissioner of Insurance for the State of Iowa, ordered the National Business Conference Employee Benefit Association (NBCEBA) to cease and desist all insurance activities within the State of Iowa and to refund all premiums collected on Iowa sales and to pay a fine of $5,000. The Order was based upon the fact that NBCEBA was not authorized by the insurance commissioner to do business in the State of Iowa.

On December 13, 1977, three days before NBCEBA's time for appeal expired, plaintiffs filed a complaint for Declaratory Judgment and Injunctive Relief in this Court alleging that the Commissioner's Order is unlawful "by reason of the fact that the plans established by NBCEBA are qualified employee benefit plans" exempted from state regulation by the Employee Retirement Income Security Act of 1974. (ERISA) or (THE ACT).

Plaintiffs concede that NBCEBA offers major medical protection to any person employed 1,000 hours a year in an employer-employee relationship (as either employer or employee) who becomes a member of the association. Memberships are solicited by agents who are paid a substantial commission. Plaintiffs acknowledge that there is no substantial distinction between NBCEBA's operation and that of companies that write major medical insurance. However, it claims that, although it is in the insurance business, its plan is a qualified employee welfare benefit plan and therefore is not subject to state regulation because exclusive jurisdiction to regulate NBCEBA is in the Department of Labor under section 514 of ERISA. 29 U.S.C. § 1144.

THE ACT, by clearly preempting the field, bars the state from regulating "any employment benefit plan described in section 1003(a) of THE ACT". 29 U.S.C. § 1144(a) and § 1144(b)(2)(B). It is equally clear that the Congress intended to reserve to the states the right to regulate the insurance industry by providing that, except for such employee benefit plans, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance. banking or securities". *Wadsworth, et al v. Whaland* (First Circuit filed September 1, 1977.)

Therefore, the question in this case is whether the plaintiffs' plan is an "employment benefit plan described in section 1003(a) of THE ACT". The Court concludes: (1) that NBCEBA is not an employment benefit plan within THE ACT, (2) that it is an insurance plan and is subject to state regulation, and (3) that plaintiffs' application for a preliminary injunction should be denied as, upon the showing made, it is highly unlikely they will succeed on the merits.

THE ACT contains the following definitions:

(1) The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan * * * which was heretofore or is hereafter established or maintained by an employer or by an employee organization or both * * * for the purpose of providing for its participants * * * through the purchase of insurance or otherwise (A) medical, surgical, or hospital care or benefits * * *

(4) The term 'employee organization' means any labor union or any organization of any kind * * * in which employees participate and which exists for the purpose, in whole or in part, of dealing with the employers concerning an employee benefit plan or other matters incidental to employment relationships; <u>or any employees' beneficiary association organized for the purpose, in whole or in part, of establishing such a plan.</u>

Plaintiffs contend that NBCEBA is an employee organization as defined by the underlined clause. They claim that a plan qualifies as an employee benefit plan even though any person involved in an employer-employee relationship may join by paying a membership fee and dues. (There is no claim that these payments are not substantially the same as insurance premiums). The State argues that "an organization is an employee's beneficiary association, for the purposes of ERISA definitions relating to plans, only where the members of the organization share *some commonality of interest with respect to their employment relationship*".

The Court agrees with the State's interpretation of an employee benefit plan for reasons hereinafter set forth, but feels compelled to observe that more precise draftsmanship by Congress would have prevented the proliferation of plans of this kind and relieved the Courts of the time consuming task of attempting to discover unclear Congressional intent.

 The Court is of the opinion that Congress did not intend to deprive the states of the right to regulate insurance plans merely because the purchaser is either an employer or an employee at large for the following reasons:

1. The Court agrees with reasons stated in the comprehensive and well supported opinion of United States District Judge Richard D. Rogers filed in the United States District Court for the District of Kansas, August 22, 1977, in the case of *Fletcher Bell v. Employee Security Benefit Association*, 437 F.Supp. 382. It would serve no good purpose to repeat that analysis in this opinion. See also: *Wayne Chemical, Inc. et al., v. Columbus Agency Service Corporation*, 567 F.2d 692 (7th Cir.) filed November 8, 1977; *Bell v. United Health and Retirement Association* (D.Kan., August 22, 1977) 77–4085; and *Hamberlin v. VIP Insurance Trust*, 434 F.Supp. 1196 (D.Ariz., 1977.)

2. The State's position coincides with the "Criteria for Distinguishing Employees Beneficiary Association" set forth in regu-

lation 315.100 of the Welfare and Pension Plans Disclosure Act (WPPDA) Interpretive Manual, 1965. WPPDA was repealed by ERISA. The regulation limited membership to members of the union formed and maintained in large part to deal with employment relationship or to *employees of a certain employer or employers.*

3. The Activity Report of the House Committee on Education and Labor, House Report No. 94–1785, January 3, 1977, states:

It has come to our attention, through the good offices of the National Association of State Insurance Commissioners, that certain entrepreneurs have undertaken to market insurance products to employers and employees at large, claiming these products to be ERISA covered plans. For instance, persons whose primary interest is in profiting from the provision of administrative services are establishing insurance companies and related enterprises. The entrepreneur will then argue that this enterprise is an ERISA benefit plan which is protected, under ERISA's preemption provision, from state regulation. We are concerned with this type of development, but on the basis of the facts provided us, we are of the opinion that these programs are not 'employee benefit plans' as defined in Section 3(3). As described to us, these plans are established and maintained by entrepreneurs for the purpose of marketing insurance products or services to others. *They are not established or maintained by the appropriate parties to confer ERISA jurisdiction,* nor is the purpose for their establishment or maintenance appropriate to meet the jurisdictional prerequisites of THE ACT. *They are no more ERISA plans than is any other insurance policy sold to an employee benefit plan.*

To the extent that such programs fail to meet the definition of an 'employee benefit plan', state regulation of them is not preempted by section 514, even though such state action is barred with respect to the plans which purchase these 'products'.

4. The state's position is consistent with the position taken by the Secretary of Labor in his Amicus Curiae brief filed in *Fletcher Bell v. Employee Security Benefit Association, supra,* and other United States Department of Labor publications: *"NEWS"* USDL 77–702, August 9, 1977, and *"NEWS"* USDL 77–963, Wednesday, November 2, 1977.

Plaintiffs' principal answer is that the broad statutory alternative definition of "employee organization", namely:

[O]r any employee's beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

has never been given proper consideration.

NBCEBA comes within this broad definition unless "employees" means those employees with some commonality of interest in their employment relationship. Plaintiffs, quoting from 29 U.S.C. § 1001, the section of THE ACT which states Congressional findings and declaration of policy, argue that commonality is not required because THE ACT is a forerunner of national health insurance and is intended to make group health insurance plans available to large segments of our population which could not get group insurance under regular group insurance plans. They also argue that Congress intended to remove this particular group from state regulation.

The Court does not believe such purposes can be read into section 1001. The plaintiffs do not cite any authority to support their interpretation of THE ACT, relying on the broad definition alone. Congress exhibited an overall concern for the soundness and stability of employee benefit plans and provided for disclosures and safeguards with respect to the establishment, operation and administration of such plans. Section 1001(b) states, in part:

It is hereby declared to be the policy of this Act to protect interstate commerce and the interest of participants in employee benefit plans * * * by requiring the disclosure and reporting to participants * * * of financial and other information with respect thereto, by establishing standards of conduct, responsi-

bility, and obligation for fiduciaries of employee benefit plans * * *.

There is no suggestion anywhere that one of the purposes of THE ACT was to broaden the definition of employee benefit plans in order to make such plans available to a wider spectrum of our society. There were no plans of this type claiming to be employee benefit plans prior to the enactment of ERISA. They are the result of the broad alternative definition of "employee organization" which appeared to offer an escape from state insurance regulations.

Congress could have made its intention clearer by a more appropriate definition of "employer." "Employee" is defined as "any individual employed by an employer." "Employer" means:

> "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity."

This limited definition of employer excludes the employer at large contrary to plaintiffs' position. On the other hand, it does not seem broad enough to include as employees those whose benefit plan is established and maintained by an employee organization alone. Under such a plan the employer would not have to act either directly or indirectly in relation to the plan. There is, however, some similarity to the WPPDA criteria in regulation 315.100:

> 1. The membership in the association must be conditional as one's employment status.

Examples:

> (a) Membership is limited to employees of a certain employer or employers, or

> (b) All members must be members of the union. Membership is tied to the union which itself is formed and maintained in large part to deal with employment relationships.

This court is convinced that Congress intended the condition of commonality of interest in the employee-employer relationship to continue as a condition and qualification for an "employee benefit plan".

In the Court's opinion, Congress did not consider that anyone would interpret THE ACT to authorize the wholesale solicitation of any individual in the country who is involved in an employer-employee relationship into an "employee benefit association." The Court does not believe Congress intended to deprive the state of the right to protect its individual citizens from possible loss by regulating this type of insurance plan.

IT IS THEREFORE ORDERED that plaintiffs' Motion for a Preliminary Injunction is denied.