**Olin R. BAUCOM, Thomas R. Card, and William V. Fortenbury, Plaintiffs,**

**v.**

**PILOT LIFE INSURANCE COMPANY and Ralston F. Welch, Defendants.**

**Civ. No. C–86–890–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

Oct. 7, 1987.

Aaron N. Clinard, High Point, N.C., for plaintiffs.

Bynum M. Hunter, Bruce P. Ashley, Greensboro, for Pilot Life Ins. Co.

Ralston F. Welch, pro se.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This case is before the court for a final ruling as to the existence of federal question jurisdiction. The central issue is whether the Carolinas Section Professional Golf Association Retirement Plan (the "Plan") is an "employee benefit plan" as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3). The definition of an "employee benefit plan" turns on whether the Plan was "established or maintained" by the Carolinas Section Professional Golf Association (the "CSPGA"), and, if so, whether the CSPGA is an "employee organization." 29 U.S.C. § 1002(2)(A).

After reviewing the pertinent case law and legislative history, the court concludes that the CSPGA is not an "employee organization." Even if the conclusion were otherwise, the Defendants, as the party seeking to preserve removal, have not met their burden of proving that the Plan was "established or maintained" by the CSPGA. For these reasons the Plan is not covered by ERISA and the Plaintiffs' motion to remand will be granted.

## FACTS AND PROCEDURAL HISTORY

The factual record before the court consists of the complaint, the answers of the two Defendants, and the exhibits submitted

by both parties. The Plaintiffs allege that they were participants in the Plan and that for numerous years they forwarded payments to Defendant Welch, an agent of Defendant Pilot Life, as trustee of the Plan. These payments were allegedly used to purchase whole life insurance from Pilot Life and to fund a trust account with a guaranteed interest rate. Plaintiffs claim that Defendant Welch converted the trust monies and the cash value of the insurance policies, depriving them of their anticipated retirement benefits. Welch admits that he was trustee of the Plan, and Pilot Life admits that it issued policies to the Plaintiffs and received premium payments until July 1971, when the insurance policies were surrendered. The remaining allegations are denied.

Plaintiffs originally filed suit in the Superior Court of Guilford County in October 1986, and Pilot Life removed the case to this court on November 13, 1986. The basis for the removal was Pilot Life's claim that the Plan was an "employee benefit plan" covered by ERISA, therefore this court had original jurisdiction pursuant to 29 U.S.C. § 1132(e)(1). The Plaintiffs moved to remand on November 25, 1986. This motion, which raised issues regarding the effective date of ERISA and the scope of ERISA preemption of state law, was denied pursuant to a memorandum opinion and order dated May 13, 1987.

Incident to a request by the court for briefing of further preemption and jurisdictional issues, the Plaintiffs moved for the court to reconsider their motion to remand. This motion to reconsider raised for the first time the issue of whether the Plaintiffs and the CSPGA, and therefore the Plan, fall within ERISA's definitional limitations. In an opinion and order dated August 5, 1987, the court directed the parties to submit briefs discussing the Plaintiffs' status as "employees" and whether the CSPGA qualifies as an "employee organization" under ERISA.

Both parties submitted as exhibits the constitution of the CSPGA and the constitution, by-laws, and regulations of the PGA of America, the CSPGA's parent organization. The relevant parts of these documents relate to membership, participation by members, and the purposes and activities of the CSPGA.

Membership requirements for the CSPGA are established by the PGA of America. Under the national constitution, membership is open to golf professionals, assistant golf professionals, and approved tournament players. A golf professional is a person who owns and operates or supervises and directs a golf shop at a recognized club, course, or range, and engages in or supervises golf instruction at that facility. An assistant golf professional must be regularly employed by a golf professional as a teacher or shop assistant. A tournament player must compete in a minimum number of PGA tournaments or, in effect, be one of the leading golfers in the PGA. Constitution of the PGA of America, art. III, §§ 1(d), (e), and (f). Based on these definitions, CSPGA members may be employers, employees, or self-employed, as those terms are commonly understood.

Under the CSPGA constitution its members participate in the organization in several ways. Annual meetings are held at which CSPGA officers are elected. Members in each of the five regions also select area directors who, along with the officers and two directors at large, comprise the board of directors, which manages the section. Finally, a member may serve on one or more of sixteen committees which administer various organizational tasks. CSPGA Constitution, arts. VI, VII, and IX.

The objectives of the CSPGA include the following:

> To promote the game of golf, to protect and advance the mutual interest of members, to hold meetings and tournaments for the benefit and enjoyment of its members, to assist deserving unemployed members to obtain a position, [and] to promote good relations with clubs ... within the section.

CSPGA Constitution, art. I. Also relevant is Article XI, which provides that the board of directors shall seek to place qualified members in vacated positions, to upgrade the quality of those positions, and to act as

an advisor to clubs when so requested. Additionally, there is a club relations committee whose job is to improve present positions, develop new job opportunities, and create a better business relationship between the members and their employers. CSPGA Constitution, art. IX. Finally, the court has considered the national PGA Guidelines and Goals of Employment and Article X of the PGA of America constitution, which authorizes the national PGA to establish retirement and other benefit programs for its members.

Noticeably lacking from the record are any details concerning the Plan itself. There is no evidence as to when the Plan was established or the circumstances surrounding its establishment. Aside from Defendant Welch's admission that he was the trustee of the Plan, the court lacks any details as to Plan administration. The very terms of the Plan itself are unknown because no true copy of the Plan has been submitted.

## DISCUSSION

Under 28 U.S.C. § 1447(c), this court must remand the case to the state courts "[i]f at any time before final judgment it appears that the case was removed improvidently and without jurisdiction." It is well established that the Defendants, as the party seeking removal, have the burden of proving that federal jurisdiction is proper. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Steel Valley Authority v. Union Switch and Signal Division*, 809 F.2d 1006, 1010 (3d Cir.1987). If proof is needed to support the jurisdictional allegations, the removing party must supply the necessary evidence. *McNutt*, 298 U.S. at 189, 56 S.Ct. at 785. The removal statute is strictly construed against removal, with all doubts resolved in favor of remand. *Steel Valley Authority*,

809 F.2d at 1010. These principles will guide the court's efforts to apply ERISA's definitions to the limited facts before it.

### I. *"Employees" and "Employee Organization"*

The ERISA statute is the proper place to begin. Under 29 U.S.C. § 1002(3), an "employee benefit plan" means "an employee welfare plan or an employee pension plan or ... both." Given that the Plan at issue deals with retirement benefits, a "pension plan" is further defined as "any plan, fund, or program which was ... established or maintained by an employer or by an employee organization, or by both, to the extent that [it] ... provides retirement income to employees." 29 U.S.C. § 1002(2)(A) (Supp.1987).

Since the parties and the court agree that the CSPGA is not an employer, the crucial questions become (1) whether the Plan was "established or maintained ... by an employee organization," and (2) whether its beneficiaries are "employees." Further unpacking of the statute shows that "employee organization" means either a group in which employees participate and which deals with employers regarding the work relationship, or any employee beneficiary association organized in part to establish an employee benefit plan.[1] "Employee" is defined as "any individual employed by an employer," and "employer" means "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5), (6) (Supp.1987).

The Fourth Circuit and other courts have noted the lack of guidance provided by the statutory definitions of "employee" and "employer." *Darden v. Nationwide Mutual Ins. Co.*, 796 F.2d 701, 704 (4th Cir. 1986); *National Business Conference Employee Benefit Ass'n v. Anderson*, 451 F.Supp. 458, 462 (S.D.Iowa 1977) (recogniz-

---

1. 29 U.S.C. § 1002(4) (Supp.1987). The full text of the definition is as follows:

    'Employee organization' means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employee's beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

ing that the definitions of "employee" and "employer" when read together seem to exclude those whose plans are maintained solely by an employee organization, a result which Congress surely did not intend). *Darden* thus held that the interpretation of "employee" should "be tailored to the purposes of the statute being construed." *Darden*, 796 F.2d at 706 (citing *United States v. Silk*, 331 U.S. 704, 713, 67 S.Ct. 1463, 1468, 91 L.Ed. 1757 [1947], and *NLRB v. Hearst Publications*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 [1944]). In deciding whether an individual was an "employee" of a specific employer, *Darden* rejected the common law definition of employee and instead looked to whether the employee relied on a reasonable expectation of benefits and had relatively low bargaining power versus his employer. *Darden*, 796 F.2d at 706. This court, in contrast, must define "employee" as it relates to an "employee organization," but it will be guided by *Darden*'s principle of interpreting "employee" and "employee organization" with due regard for the purposes of ERISA.

Pilot Life argues that CSPGA members obviously participate in its affairs and that, based on Articles I, IX, and XI of its constitution, the CSPGA exists in part to deal with employers concerning the work relationship. In Pilot Life's view, these factors combine to make the CSPGA an "employee organization" (under the first half of that term's definition). Positing that Congress intended for ERISA to be the sole law regulating pension plans, it argues that these Plaintiffs qualify as "employees." Finally, based presumably on the CSPGA's focus on the golfing profession, Pilot Life states that the CSPGA "obviously" meets the commonality-of-interest test discussed in *Bell v. Employee Security Benefit Ass'n*, 437 F.Supp. 382 (D.Kan.1977).

The court agrees that the CSPGA is an organization in which its members participate and which exists, in part, to deal with employers in matters related to employment. For the court, however, the existence of a commonality of interest among CSPGA members is far from obvious.

*Bell* relied on regulations published under the Welfare Pension Plans Disclosure Act to hold that a commonality of interest among members was an essential ingredient in an employee beneficiary association (the second half of the definition of "employee organization"). *Bell*, 437 F.Supp. at 394. Later cases have discussed the commonality principle in various contexts and suggested that it permeates the definitions of "employee," "employee organization," and "employee benefit plan."

In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982), the court considered whether a multiple employer trust or the employers who obtained insurance through the trust had established employee benefit plans. The court stated that "the gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan ... falls within the ambit of ERISA only if the plan ... covers ERISA participants because of their employee status in an employment relationship." *Donovan*, 688 F.2d at 1371. The court applied this principle to conclude that the trust itself was not an ERISA plan, but the subscriptions by individual employers generally were.

The Eighth Circuit reached a similar holding in *Wisconsin Education Ass'n Ins. Trust v. Iowa State Bd. of Public Instruction*, 804 F.2d 1059 (8th Cir.1986). *Wisconsin* involved a benefit plan admittedly maintained by a union, but thirty per cent (30%) of the participants were not union members. In deciding that the plan therefore did not qualify as an employee welfare plan, the court held that

> [t]he definition of an employee welfare benefit plan is grounded on the premise that the entity that maintains the plan and the individuals that benefit from the plan are tied by a common economic or representation interest.... An employee depends on his employer; a union member relies on his union.

*Wisconsin*, 804 F.2d at 1063.

*Donovan* and *Wisconsin* construed the definition of an employee welfare plan, whereas this case involves an alleged employee pension plan. The principal differ-

ence between the two is in the type of benefits provided; a further difference is that welfare plan benefits must go to "participants," whereas pension plan benefits must go to "employees." *Donovan* and *Wisconsin* were premised on the definition of "participant." However, "participant" is defined in terms of employees and employment,[2] and the court believes that the commonality principle enunciated in these cases is equally applicable to an employee pension plan. Both types of plans must be established or maintained by employers or employees organizations, and the benefits from both must go to those who share a common economic or representational interest.

The broadest statement of the commonality principle is found in *National Business Conference Employee Benefit Ass'n v. Anderson,* 451 F.Supp. 458 (S.D.Iowa 1977), which involved facts similar to those in *Bell.* In *National Business,* the key question was whether the plaintiff qualified as an "employee beneficiary association" and whether its members were "employees." *National Business,* 451 F.Supp. at 460, 461. After reviewing *Bell* and the authorities cited therein, the court concluded that "employees" means those employees with some common interest in their employment relationship, and that Congress intended for a commonality of interest in the employee-employer relationship to be a requirement for an "employee benefit plan." *National Business,* 451 F.Supp. at 461, 462.

Returning to ERISA's language, the court observes that, despite its limitations, the statutory definition of "employee" mandates that an employee must work for another.[3] An "employee organization" must therefore be a group of people who work for others. When the members of such a group work for a single employer or a related group of employers they have a shared interest in the terms and conditions of their employment. This is the common interest required in *Wisconsin, National Business,* and *Bell.* The court concludes that similar common interests must appear among CSPGA members in order for the CSPGA to qualify as an "employee organization" and for its members to be "employees."

Applying the commonality-of-interest test to the facts of this case, the court is unable to find the necessary economic ties among CSPGA members. While CSPGA members share the goals of promoting the game of golf and upgrading the status of golf professionals, their interests diverge from that point. A professional who owns his golf shop or range will have a different agenda from the professional who merely manages such a facility. Whether the full professional is self-employed or employed by others, his economic interests may actually conflict with the assistant professional—an employee. Finally, there is the tournament player, no doubt a rarity but nonetheless a CSPGA member and one whose economic interests differ sharply from a regular or assistant professional's.

In sum, the CSPGA is a professional association which lacks a uniform interest in the employer-employee relationship. Membership in the CSPGA, and hence the coverage of the plan at issue, is not conditioned on employee status. Some members are employees, some are employers, some are self-employed, and some who are employees of their club or course may in turn become employers of assistant professionals. Because the CSPGA does not pass the commonality-of-interest test, it cannot qualify as an "employee organization," its members are not "employees," and the plan is not an "employee pension plan."

---

2. A "participant" is "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization,...." 29 U.S.C. § 1002(7) (Supp.1987).

3. S.Rep. No. 93–127 and H.R.Rep. No. 93–533 state that "employee" is intended to encompass any person who has the status of an "employee" under a collective bargaining agreement. 1974 U.S.Code Cong. & Admin.News 4639, 4648, 4851.

While it is true that ERISA's coverage should be liberally construed, H.R.Rep. No. 93–533, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4854, the court is convinced that the CSPGA is beyond ERISA's definitional limits. As was discussed in *Lamb v. Connecticut General Life Ins. Co.*, 509 F.Supp. 560 (D.N.J.1980), *aff'd*, 643 F.2d 108 (3d Cir.), *cert. denied*, 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981), there are various groups, many of which establish group insurance or welfare plans not covered by ERISA. *Lamb* specifically included professional organizations in a list of groups having no relation to ERISA. *Lamb*, 509 F.Supp. at 565. Similarly, the CSPGA is a professional association whose membership is conditioned on one's occupation, as opposed to one's employment status. The CSPGA thus fails the common-interest test and is not an "employee organization."

## II. *Established or Maintained by the CSPGA*

■ Assuming, *arguendo*, that the CSPGA is an employee organization, Pilot Life must also show that the CSPGA "established or maintained" the Plan at issue. Other than the Plan's name and its apparent restriction to CSPGA members, there is no evidence before the court as to how the Plan was created or administered. The consequences of this lack of evidence must fall on the Defendants, as the party advocating removal jurisdiction.

The meaning of "establish or maintain" is unclear; the phrase is not defined in ERISA. Dictionaries tell us that "establish" means "to bring about or into existence" or "to found." *Black's Law Dictionary* 490 (5th ed.); *see also Webster's New Collegiate Dictionary* 388 (1979). Department of Labor regulations indicate that a mere endorsement may be enough to establish an ERISA plan. 29 C.F.R. § 2510.3–1(j) & § 2510.3–2(d), (f) (1986).

■ The sparse case law shows that the courts have generally looked to the extent of involvement with plan administration to determine who established or maintained the plan. *Hamberlin v. VIP Ins. Trust*, 434 F.Supp. 1196 (D.Ariz.1977), held that a plan endorsed by employers was nonetheless established by the insurance brokerage firm who devised it and sold it directly to individual employees. Similarly, in *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127 (7th Cir.1986), the ministerial acts of allowing the advertisement of annuity plans and collecting contributions designated by participating employees did not constitute establishment or maintenance of a plan. *Compare Wirtz v. Gulf Oil Corp.*, 239 F.Supp. 483 (E.D.Pa.1965) (holding that an employer who collected group insurance premiums and later began making contributions on behalf of employees had established a plan under the WPPDA). The court concludes that establishing or maintaining a plan requires at least some degree of active involvement in the plan's founding or administration.

From the evidence before it the court is unable to determine the extent of the CSPGA's initial or continuing involvement with this Plan. Plaintiffs' brief states that the CSPGA endorsed the Plan but took no further action in its implementation or administration. Plaintiffs' Brief of August 14, 1987, at 11. The Defendants' brief does not address this issue. Absent clarifying evidence or further details, the court should not rely on the Plaintiffs' representation. Further, it appears that the needed evidence may not exist, for the most relevant document—a copy of the Plan—has not been submitted, and neither party seems able to produce one. In this state of affairs the court must hold that the Defendants have failed to meet their burden on the establishment issue. *See Matthew 25 Ministries, Inc. v. Corcoran*, 771 F.2d 21, 22 (2d Cir.1985) (the party seeking ERISA jurisdiction failed to demonstrate its entitlement to federal relief). Under 28 U.S.C. § 1447(c), the presence of such uncertainty requires the court to remand this case to the Superior Court of Guilford County.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

**1182**

## ORDER

BULLOCK, District Judge.

In accordance with the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that the Plaintiffs' motion to reconsider is hereby GRANTED, and IT IS FURTHER ORDERED that the Plaintiffs' motion to remand is hereby GRANTED and this case is REMANDED to the General Court of Justice, Superior Court Division, Guilford County, North Carolina.