**Allan CHESHIRE, d/b/a Breaktime Distributing Company, Plaintiff,**

v.

**COCA–COLA BOTTLING AFFILIATED, INC.; Beverage South, Inc., d/b/a Pepsi–Cola/7–Up Bottling Company of Greenville S.C.; Coca–Cola Bottling Company of Anderson, S.C.; Pepsi Cola Company of Anderson, S.C.; Pepsico, Inc., Bi–Lo, Inc.; Fast Fare, Inc., and The Pantry, Inc., Defendants.**

Civ. A. No. 6:89–2618–17.

United States District Court, D. South Carolina, Greenville Division.

July 30, 1990.

## ORDER

JOE F. ANDERSON, Jr., District Judge.

In this case, plaintiff is a distributor of soft drinks including Buffalo Rock Gingerale, Snapple, Grapico, and Cajun Cola in seven South Carolina counties designed in the complaint as "plaintiff's distribution area". These counties include Anderson, Greenville, and the surrounding counties of Oconee, Pickens, Laurens, Abbeville and Greenwood. The defendants include the distributors of Coca–Cola and Pepsi–Cola in Anderson and Greenville, together with the Coca–Cola and Pepsi–Cola parent companies. Also included as defendants are three chain stores, Bi–Lo, Fast Fare and Pantry, selling Coke and Pepsi products in the Anderson–Greenville area.

Plaintiff filed his complaint in Greenville County Court of Common Pleas on October 4, 1989, stating two causes of action under state law. Included in the complaint were allegations of various anti-competitive marketing and distribution practices and agreements between and among the defendants which were allegedly undertaken by defendants pursuant to a conspiracy "(t)o eliminate competition within Plaintiff's distribution area and throughout the southeastern United States." Complaint, ¶ 15. Also included were allegations of a price-fixing conspiracy within plaintiff's distribution area as evidenced by guilty pleas entered by some defendants in federal court. Complaint, ¶ 20.

For a first cause of action, plaintiff contends that defendants' acts constitute unfair trade practices and unfair methods of competition under the South Carolina Unfair Trade Practices Act, S.C.Code Ann. § 39–5–10 *et seq.* (Law.Co-op.1988) ("UTPA"). The second count of plaintiff's complaint alleges a common law civil conspiracy. No federal claim was expressly pleaded. Defendants, relying on the "artful pleading doctrine," noticed removal on the basis of federal question jurisdiction, contending that the claims asserted, although pleaded under state law, were essentially federal in nature and hence removable under 28 U.S.C. §§ 1441(a) and (b). Specifically, defendants contend that the claims asserted in the complaint, if they are legally cognizable at all, should properly be brought *only* under the federal antitrust laws and must be judged under federal antitrust standards. The matter is now before the court on plaintiff's motion to remand for lack of federal subject matter jurisdiction.

Although plaintiff is the moving party in this request for remand, it is elementary that defendants retain the burden of establishing that the underlying action is properly removed. 14A Wright, Miller & Cooper, Federal Practice and Procedure § 3721 (1985) (hereinafter "Wright & Miller"); *Baucom v. Pilot Life Ins. Co.,* 674 F.Supp. 1175 (M.D.N.C.1987).

The sole basis for removal in this case is federal question jurisdiction, as there is not complete diversity between the parties. The existence of a federal question sufficient to support removal normally turns on the well-pleaded allegations of the

complaint. *Great Northern Railway Co. v. Alexander,* 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918). Where plaintiff alleges facts that will support claims arising under both state and federal law, plaintiff normally is free to ignore the claims arising under federal law and "pitch his claim" on state grounds, thereby precluding removal on the basis of federal question jurisdiction. *Franchise Tax Board v. Constructions Laborers Vacation Trust,* 463 U.S. 1, 22, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983). However, this "master of the complaint" rule must be balanced with the fact that courts must be cautious in denying defendants access to a federal forum since under 28 U.S.C. § 1447(d), remand orders are generally not reviewable. 14A Wright & Miller, § 3721. To this end, the "artful pleading" doctrine has developed as an exception to the rule limiting the court's examination to the face of the complaint when it appears the plaintiff seeks to conceal the federal nature of his claim by fraud or obfuscation. *Salveson v. Western States Bankcard Ass'n.,* 525 F.Supp. 566, 572 (N.D.Calif.1981). In determining whether a complaint is "artfully pleaded," the court may look behind it, or "peek," to ascertain facts that would appear in a well-pleaded complaint. *In re Wiring Device Antitrust Litigation,* 498 F.Supp. 79 (E.D.N.Y.1980).

Application of the artful pleading doctrine is most appropriate in cases where federal law altogether preempts and supplants state law, but plaintiff seeks to avoid the effect of preemption by pleading only state causes of action. *See, Avco Corp. v. Aero Ledge No. 735, International Association of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In the area of antitrust and unfair trade practices, Congress has never expressed any intent to occupy the regulated area exclusively, and the courts have inferred none. On the contrary, the Fourth Circuit has clearly rejected the idea that federal antitrust law preempts application of the South Carolina UTPA. *Bostick Oil Co. v. Michelin Tire Corp., Com. Div.,* 702 F.2d 1207, 1219 (4th Cir.) *cert. denied,* 464 U.S. 894, 104 S.Ct. 242, 78 L.Ed.2d 232 (1983); *Itco Corporation v. Michelin Tire Corp., Com. Div.,* 722 F.2d 42, 48, n. 9 (4th Cir.) *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1983). The court therefore rejects defendants' argument that the complaint's repeated use of antitrust conspiracy terminology and the fact that the practices at issue have traditionally been the subject of federal antitrust challenges reflect the essentially federal nature of plaintiff's claims. By the express terms of the statute, UTPA prohibits both unfair or deceptive acts or practices (consumer protection) *and* anticompetitive conduct (antitrust proscription).[1] The fact that antitrust elements and concepts may be involved does not necessarily make it a federal antitrust case. Federal question does not exist simply because the subject matter of the action could give rise to a federal law claims as well as a state law claim. *Salveson, supra.*

The artful pleading doctrine has also been applied in the antitrust area where plaintiff first files a lawsuit alleging federal claims and then, after dismissal, seeks to recast those claims under state law, *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) and where plaintiff, by failing to seek remand, has acquiesced in defendant's characterization of its claims as federal, *Three J Farms, Inc. v. Alton Box Board Co.,* 1979–1 CCH Trade Cas. ¶ 62,423 (D.S.C.1978), *rev'd and remanded on other grounds,* 609 F.2d 112 (4th Cir.1979), *cert.*

---

1. South Carolina adopted Alternative Form Number 1 of the Unfair Trade Practices and Consumer Protection Act. Day, *The South Carolina Unfair Trade Practices Act: Sleeping Giant Or Illusive Panacea?,* 33 S.C.L.Rev. 479 (1982) (hereinafter *"Panacea"*). As noted by Professor Day, comments to the model legislation explain that this alternative "enables the enforcement official to reach not only deceptive practices that prey upon consumers, but also unfair methods that injure competition. This form will reach price fixing arrangements, boycotts by suppliers, coercion of retailers, and other trade restraints which tend to create monopolies and enhance prices." (citation omitted) The other two alternatives in the model act are limited to consumer protection. *Id.,* p. 480, n. 7.

*denied,* 445 U.S. 911, 100 S.Ct. 1090, 63 L.Ed.2d 327 (1980). In both of these instances, the claims were made federal by plaintiff's own conduct and the courts refused to allow plaintiff to escape the consequences of that conduct to defendant's prejudice. *See, Salveson,* 525 F.Supp. at 577. In the present case, plaintiff has taken no such circuitous action nor has plaintiff failed to timely move to remand his case.

More troublesome is defendants' argument that the involvement of interstate commerce in this action precludes application of the State UTPA. Defendants argue that while plaintiff's business may be intrastate in scope, the defendants' business operations are either regional or national in scope, and where a complaint challenges marketing practices and techniques which are utilized on a multi-state basis, it is important that federal antitrust concepts be applied to achieve uniformity, otherwise:

> differing state regulation, although not conflicting, (would require) the enterprise to comply with the strictest standard of several states, (and this) extra-territorial effect which the application of a particular state law would exact constitutes, absent a strong state interest, an impermissible burden on interstate commerce.

*Flood v. Kuhn,* 443 F.2d 264, 267 (2d Cir.), *aff'd.,* 407 U.S. 258, 92 S.Ct. 2099, 32 L.Ed.2d 728 (1972).

Defendants rely on two cases filed under South Carolina's antitrust law where the courts held that plaintiff's antitrust claims based on transactions involving interstate commerce were federal in nature. *In re Wiring Device, Three J Farms, Inc., supra.* Both of these cases are based on an earlier state case which limited the application of South Carolina's state antitrust law to solely intrastate activity. *State v. Virginia–Carolina Chemical Co.,* 71 S.C. 544, 51 S.E. 455, 461 (1905) (state antitrust law cannot regulate imported goods). Defendants contend that the scope of UTPA

should be subject to the same limitation and governed by the same rules applicable to antitrust claims.

While the court notes that a state statute may not impose an undue burden on interstate commerce, the court does not find defendants' arguments in this instance persuasive. First, these two cases, which involve the scope of state antitrust law and not the scope of state UTPA, have been criticized by at least one commentator as misreading the holding of *Virginia–Carolina Chem. Co. See, Panacea,* p. 503, fn. 159.

More on point and specifically addressing the scope of UTPA, the Fourth Circuit in *Itco* rejected defendant's suggestion that application of North Carolina's UTPA to defendant's multi-state conduct offended the commerce clause.[2] The *Itco* court stated:

> Absent some reason to believe that the North Carolina act is an attempt directly to regulate interstate commerce, and is not an act designed to address primarily local concerns which happens to have an occasional incidental, but not excessive effect upon interstate commerce, we perceive no cause for constitutional concern.

*Itco,* 722 F.2d at 48, n. 9. As the *Itco* court recognized, only where the burden imposed on interstate commerce is excessive in relation to the local interests served by the state will the commerce clause be offended. Following *Itco's* lead, a federal court in North Carolina upheld application of that state's UTPA to concerted multi-state conduct which resulted in injury to North Carolina residents. *American Rockwool, Inc. v. Owens–Corning Fiberglas,* 640 F.Supp. 1411 (E.D.N.C.1986). The court's reasoning bears repeating:

> Section 75–1.1 is designed, in part, to address the very real local concern that North Carolina businesses not be victimized by unfair methods of competition. When applied to concerted multi-state conduct resulting in injury to North Carolina residents, the statute may have an

**2.** South Carolina's UTPA closely parallels North Carolina's Act and has been interpreted interchangeably by the courts.

incidental interstate effect, but that effect certainly is not excessive in light of the local interests served and its minimal burden upon other states.... Any time a single state's law is applied to multistate conduct, there is *some* effect on interstate commerce in the broadest sense, but that effect rarely burdens interstate conduct to a constitutionally impermissible extent. In the instant case, § 75–1.1 only incidentally affects interstate commerce while serving substantial local interests.

*Id.*, at 1428.

South Carolina's UTPA is not limited to in-state conduct by its own terms nor does it contain on its face any undue burdens on interstate commerce. The court believes that its purpose and intent is to hold parties causing injury in South Carolina accountable in the courts of this state, insofar as possible. The court further determines that, under the facts of the present action, application of the state UTPA does not run afoul of the commerce clause.

If federal jurisdiction is in doubt, such doubt must be resolved in favor of state court jurisdiction and the case remanded. *Baucom, supra; Lawyers Title Insurance Corp. v. Pioneer National Title Insurance Corp.*, 600 F.Supp. 402 (D.S.C. 1984). Plaintiff has apparently chosen to forego his federal remedies to pursue relief in state court. He is so entitled, and the case is hereby remanded for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

IT IS SO ORDERED.