Argued and submitted January 24, affirmed July 22, 1992

In the Matter of
The Derby Association Trust, Inc.,
Independent Contractor's Association,
Garald W. Derby and Mark G. Derby.

THE DERBY ASSOCIATION TRUST, INC.,
Independent Contractor's Association,
Garald W. Derby and Mark G. Derby,
*Petitioners,*

*v.*

DEPARTMENT OF INSURANCE
AND FINANCE,
*Respondent.*

(DIF No. 90-01-026; CA A68002)

835 P2d 149

Donald L. Dickerson, Eugene, argued the cause and filed the brief for petitioners.

Karen Majcher Art, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

De MUNIZ, J.

**De MUNIZ, J.**

Petitioners seek review of an order of the Department of Insurance and Finance (DIF) that concluded that petitioners violated ORS 731.354[1] by transacting insurance business without obtaining a certificate of authority. The issue is whether petitioners are. providing a "welfare and benefits program" that is subject to regulation only under the federal Employee Retirement Income Security Act (ERISA)[2] or are engaged in insurance transactions that are subject to regulation under Oregon laws. We affirm.

We take the facts from DIF's findings. The Derby Association Trust, Inc. (DAT), was incorporated in March, 1989. In May, 1989, DAT began marketing the DAT Plan through petitioners Garald Derby and Mark Derby. The DAT Plan provided accidental disability, accidental death and accidental dismemberment "insurance." It was available to persons who were sole proprietors or partners in their own businesses. It was also available to employees who were designated as officers, directors and substantial shareholders in corporations. DAT issued policies to at least 128 people who were employed by 48 different, non-affiliated employers.

In February, 1990, Independent Contractor's Association, Inc. (ICA Inc.), was incorporated as a non-profit corporation. Employees and employers in the wood products industry are eligible for membership in the Independent Contractor's Association (ICA). DAT's assets were transferred to ICA Inc., and ICA Inc. assumed DAT's obligations. Neither DAT nor ICA Inc. ever obtained a certificate of authority to transact insurance business in Oregon. In March, 1990, ICA Inc. established the Independent Contractor's Association Welfare Benefit Trust for the purpose of sponsoring a "welfare benefit plan" for ICA members, which would be subject to ERISA regulation. ICA Inc. adopted the

---

[1] ORS 731.354 provides:

"No person shall act as an insurer and no insurer shall directly or indirectly transact insurance in this state except as authorized by a subsisting certificate of authority issued to the insurer by the [Director of the Department of Insurance and Finance]."

[2] 29 USC § 1001-1461.

DAT Plan as the ICA Welfare Benefit Plan (ICA Plan). ICA membership is necessary to be eligible for the ICA Plan.

The parties accept DIF's findings. Our review is limited to determining whether DIF correctly concluded that the ICA Plan is subject to regulation under Oregon insurance laws.[3] ORS 183.482(8)(a). When Congress enacted ERISA, it intended to preempt state regulation of "employee benefit programs."[4] *Shaw v. Delta Air Lines, Inc.*, 463 US 85, 91, 103 S Ct 2890 (1983).[5] DIF concluded that the ICA Plan "clearly exceeds the definitional limits of ERISA and is [therefore] subject to state regulation."[6] In reaching its conclusion, DIF

---

[3] ORS 731.004 to ORS 752.055.

[4] 29 USC § 1144 provides, in part:

"(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. * * *

"* * * * *

"(b)(2)(A) Except as provided in subparagraph (B), nothing shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities.

"(B) Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title * * * shall be deemed to be an insurance company or other insurer * * *."

[5] Although we are bound by the United States Supreme Court's interpretations of federal statutes, we are not bound by decisions of the lower federal courts, even those of the Ninth Circuit Court of Appeals. *Gillar v. Employment Division.*, 300 Or 672, 676 n 6, 717 P2d 131 (1986); *Van De Hey v. U.S. National Bank*, 102 Or App 203, 206, 793 P2d 1388 (1990), *aff'd on other grounds* 313 Or 86, 829 P2d 695 (1992). Nevertheless, we may find decisions of the lower federal courts to be instructive when we interpret federal statutes.

[6] For the purposes of ERISA,

"(1) The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan * * * established by an employer or by an employee organization, or by both, to the extent that such plan * * * was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits * * *.

"* * * * *

"(4) The term 'employee organization' means any labor union or any organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employee's beneficiary association organized for the purpose in whole or

relied on the fact that ICA members include independent contractors, employees and employers. In *Bell v. Employee Sec. Ben. Ass'n*, 437 F Supp 382, 385 (D Kan 1977), the court held that an employee benefit plan must be "provided by an employer or homogenous employee organization, such as a union." The ICA Plan is provided by ICA Inc., which had assumed DAT's obligations, including the DAT Plan. The people who purchased the DAT Plan and the ICA Plan are not employed by ICA Inc., nor were they employed by DAT. Neither DAT nor ICA Inc. are employers.

The *Bell* court also concluded that an "homogenous employee organization" must be a group with a "commonality of interests among its employee members." 437 F Supp at 394. In *Baucom v. Pilot Life Ins. Co.*, 674 F Supp 1175 (MDNC 1987), the court elaborated on the "commonality of interest" requirement. In that case, the court considered whether the Carolinas Section Professional Golf Association was an "employee organization." The association included golf professionals, assistant golf professionals and approved tournament players.[7] The court observed that those members could be employers, employees or self-employed. 674 F Supp at 1177. It recognized that members of the association shared some common interests,[8] such as promoting golf. However, the association failed the "commonality of interest" test, because professionals who own golf shops,

---

in part, of establishing such a plan.

"(5) The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 USC § 1002.

[7] The court gave these definitions:

"A golf professional is a person who owns and operates or supervises and directs a golf shop at a recognized club, course, or range, and engages in or supervises golf instruction at that facility. An assistant golf professional must be regularly employed by a golf professional as a teacher or shop assistant. A tournament player must compete in a minimum number of PGA tournaments or, in effect, be one of the leading golfers in the PGA." 674 F Supp at 1177.

[8] The purposes of the golf association included:

"To promote the game of golf, to protect and advance the mutual interest of members, to hold meetings and tournaments for the benefit and enjoyment of its members, to assist deserving unemployed members to obtain a position, [and] to promote good relations with clubs * * * within the section." 674 F Supp at 1177.

professionals who manage shops as employees and tournament players have inherently different, and potentially conflicting, economic interests. 674 F Supp at 1180.

Membership in ICA is open to employees, employers and independent contractors in the wood products industries. Like the golf association in *Baucom v. Pilot Life Ins. Co.,* *supra,* ICA fails the commonality of interest test. The ICA Plan is subject to regulation under Oregon insurance laws. DIF correctly concluded that petitioners had violated ORS 731.354 by transacting insurance business without obtaining a certificate of authority.

Affirmed.