597 A.2d 721

**Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, Petitioner,**

v.

**WEST BRANCH ADMINISTRATORS, INC., West Branch Capitol Corp., West Branch Consultants, Respondents.**

Commonwealth Court of Pennsylvania.

Heard on May 23 and May 24, 1991.

Decided July 22, 1991.

Publication Ordered Sept. 11, 1991.

382

Terrance A. Keating, for petitioner.

Donald Bailey, Paul Mangiardi, Steven W. Alm, for respondents.

NARICK, Senior Judge.

Before us are two petitions filed by Constance B. Foster, Insurance Commissioner of the Commonwealth of Pennsylvania (Petitioner). The first is the October 26, 1990 petition requesting ex parte seizure, and the second is the December 18, 1990 petition for liquidation of West Branch Administrators, Inc., West Branch Capitol Corporation and West Branch Consultants (Respondents).

The history of these consolidated cases is as follows. In 337 M.D. 1990, Petitioner filed a petition for ex parte seizure of Respondents' assets on October 26, 1990. Therein, Petitioner alleged that Respondents were unlicensed,

insolvent insurance companies, whose continued operation would cause irreparable harm to policyholders, creditors and the public. Additionally, she alleged that seizure was necessary to prevent diversion of Respondents' assets and records.

We granted Petitioner's petition for ex parte seizure of Respondents' assets on October 29, 1990. Executing the seizure order the next day, Petitioner took possession and control of Respondents' premises, assets and records.

Respondents filed a petition for immediate stay of the ex parte seizure order on November 7, 1990. Accordingly, on November 8, 1990, we ordered that a hearing be held on November 14, 1990 with regard to the seizure as per Section 512(d) of The Insurance Department Act of 1921 (Act),[1] which requires that we hold a hearing within ten days of an "insurer's" request. In response, Respondents filed a motion for indefinite continuance of the seizure hearing on November 14, 1990. That same day, we granted Respondents' request and indefinitely continued the seizure hearing.

Petitioner filed a petition for liquidation of Respondents' entities on December 18, 1990,[2] which was docketed at 374 M.D. 1990. Therein, Petitioner alleged the existence of the following grounds for liquidation:

### § 221.14. Grounds for rehabilitation

An order of rehabilitation may be based on one or more of the following grounds:

(1) The insurer is insolvent, or is in such condition that the further transaction of business would be hazardous, financially, to its policyholders, creditors or the public.

(2) There is reasonable cause to believe that there has been embezzlement from the insurer, wrongful sequestration or diversion of the insurer's assets, forgery or fraud

1. Act of May 17, 1921, P.L. 789, added by Section 2 of the Act of December 14, 1977, P.L. 280, *as amended,* 40 P.S. § 221.12(d).

2. Section 519 of the Act, *as amended,* 40 P.S. § 221.19, provides that the grounds for liquidation shall be the same as those for a rehabilitation, regardless of whether we entered a prior order of rehabilitation.

affecting the insurer or other illegal conduct in, by, or with respect to the insurer that if established would endanger assets in an amount threatening the solvency of the insurer.

. . . .

(9) Within the previous four years the insurer has willfully violated its charter or articles of incorporation or its bylaws or any insurance law in a manner which may result or has resulted in substantial harm to the property or business of an insurer or to the interests of its policy or certificate holders, creditors, or the public, or any valid order of the commissioner under sections 510 and 511.

Section 514 of the Act, *as amended,* 40 P.S. §§ 221.14.

On January 28, 1991, Petitioner filed a petition for extension of the ex parte seizure order. The next day, we granted the extension for an additional ninety day period. On March 19, 1991, Respondents requested that we hold a hearing on the ex parte seizure within ten days, as per Section 512(d) of the Act, *as amended,* 40 P.S. § 221.12(d).

Respondents waived their statutory right to a hearing on the seizure within ten days on March 25, 1991. Also on March 25, 1991, we ordered a consolidation of the seizure action, 337 M.D. 1990, and the liquidation action, 374 M.D. 1990. Further, we scheduled a consolidated hearing for May 23, 1991.

At the May 23, 1991 hearing, this Court heard testimony and accepted exhibits into evidence with regard to Respondents' alleged exemption from the Act by virtue of the Employee Retirement Income Security Act of 1974 (ERISA),[3] their potential status as insurers under the Act, and the existence of grounds for liquidation.

There are four issues before us. The first is whether Respondents are exempt from the Act by virtue of ERISA and thus not under Petitioner's jurisdiction. The second is whether Respondents were engaged in the business of insurance so as to subject them to Petitioner's jurisdiction.

3. 29 U.S.C. §§ 1001–1461.

The third is whether Petitioner had reasonable grounds to seek seizure of Respondents' assets. The fourth is whether grounds for liquidation exist such that we should grant Petitioner's December 18, 1990 petition for liquidation.

## I. APPLICABILITY OF ERISA:

 Respondents argue that they were not subject to Petitioner's jurisdiction with respect to the seizure because they were acting in a third-party administrator capacity under ERISA. According to Respondents, their activities were limited to administering and processing claims in exchange for payment, and securing and maintaining reinsurance coverage.

Under 29 U.S.C. § 1144(a), ERISA preempts state regulation of "employee welfare benefit plans" as defined in 29 U.S.C. § 1002(1). The latter section reads as follows:

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

Courts of other jurisdictions have held that the existence of an ERISA employee benefit plan is a question of fact to be addressed in light of all the surrounding facts and circumstances. *Kanne v. Connecticut General Life Insurance Co.*, 859 F.2d 96 (9th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). Specifically,

courts have used the following criteria to analyze whether a purported employee benefit plan falls under ERISA:

(1) it was provided by an employer or homogeneous employee organization, such as a union; (b) it was noncommercial in nature; (c) it did not involve solicitation; (d) it was not intended to be actuarilly sound; (e) because the employers could look only to the fund, and not to the provider of that fund, the rates were substantially lower than insurance rates.

*Bell v. Employee Security Benefit Association,* 437 F.Supp. 382, 391 (D.Kan.1977).

Firstly, we note that Paul Mangiardi, president and sole shareholder of Respondents' various entities, admitted on the witness stand that Respondents were never approved by ERISA. N.T. at 363. Despite this lack of approval, Respondents admitted to mailing out their brochure, Exhibit Q to the petition for ex parte seizure, with the designation "ERISA approved health benefit plan." N.T. at 367. According to the *Bell* case, no solicitation is permitted with regard to an ERISA employee benefit plan.

Secondly, we note that Respondents at no time throughout the proceedings made representations that they ever applied for approval of ERISA plans to the appropriate federal authorities or complied with any of the reporting requirements under ERISA. In *Matthew 25 Ministries, Inc. v. Corcoran,* 771 F.2d 21 (2d Cir.1985), that court held that "ERISA contains no provision which purports to preempt State insurance laws upon the mere filing of an application for approval." *Id.* at 22. Here, Respondents did not even take that step.

Thirdly, Mr. Michael Smith, a Department of Insurance insurance examiner who reviewed Respondents' records, testified that Respondents' program consisted of numerous, different employers. N.T. at 223. As we stated above, an ERISA employee benefit plan must be provided by an employer or homogeneous employee organization. *Bell.* Respondents' program consisted of such diverse entities as Armand Jewelers, Barrett Lumber Company, Centre Con-

crete Company and Earthmovers Unlimited, Inc. Petitioner's Supplemental Exhibit "J."[4]

Additionally, Mr. Smith testified that there were cases where Respondents had grouped multiple employers into single employer trusts, contrary to ERISA. N.T. at 223. In light of all the surrounding facts and circumstances, Respondents' argument that they were exempt from the Act by virtue of ERISA fails. Next, we must address whether Respondents were engaged in the business of insurance and thus subject to Petitioner's jurisdiction.

## II. RESPONDENTS' POTENTIAL STATUS AS AN "INSURER":

█ Respondents argue that they do not constitute persons covered under Section 502(4) of the Act, *as amended*, 40 P.S. § 221.2(4), and thus are not insurers. That section provides that the proceedings authorized by Article V of the Act, covering the suspension of business and involuntary dissolutions, may be applied to "[a]ll other persons organized or in the process of organizing with the intent to *do an insurance business* in this Commonwealth." Section 502(4) of the Act, *as amended*, 40 P.S. § 221.2(4) (emphasis added).

Under Section 503 of the Act, *as amended*, 40 P.S. § 221.3, any of the following acts constitute "doing business:"

(1) the issuance or delivery of contracts or certificates of insurance to persons resident in this Commonwealth;

(2) the solicitation of applications for such contracts, or other negotiations preliminary to the execution of such contracts;

(3) the collection of premiums, membership fees, assessments or other consideration for such contracts; or

---

4. At the beginning of the hearing, the parties agreed to the authenticity and admissibility of Petitioner's Supplemental Exhibit "J," found in Petitioner's May 10, 1991 Memorandum filed in preparation for the May 23, 1991 hearing. N.T. at 17–18.

(4) the transaction of matters subsequent to execution of such contracts and arising out of them.

Here, there are a multitude of factors which support the proposition that Respondents were "doing an insurance business" and exceeding the scope of a third party administrator's functions. They are as follows:

(1) In violation of Section 503(3) of the Act, 40 P.S. § 221.3(3), Respondents collected premiums from their participating employers and "pooled" those funds into one claims account, thereby spreading risk like an insurance company;[5]

(2) Respondents sent out the brochure contained in Exhibit Q to the petition for ex parte seizure to prospective clients, thus violating Section 503(3) of the Act, 40 P.S. § 221.3(3);[6] and

(3) Respondents represented to an employer that they would be responsible for the first $10,000 of claims, thereby implying that they would be actuarilly sound like an insurer;[7]

Therefore, we agree with Petitioner that Respondents were subject to Petitioner's jurisdiction because they were illegally "doing an insurance business" without a certificate of authority, as required under Section 208 of the Act, *as amended*, 40 P.S. § 46.

### III. PROPRIETY OF THE SEIZURE:

■ The third issue is whether Petitioner had reasonable grounds to seek seizure of Respondents' assets.[8] Under

5. N.T. at 39, 65 and 250.

6. N.T. at 367.

7. N.T. at 101.

8. We note the existence of a December 14, 1990 letter from Paul and Gretchen Mangiardi to counsel for Petitioner. The letter reads as follows:

Dear Mr. Keating,

This is to inform you that I Paul Mangiardi and my wife Gretchen Managiardi [sic] are the owners of the property seized at 302 Matthews Blvd., S. Williamsport, Pa.

Section 510(b) of the Act, *as amended,* 40 P.S. § 221.10(b), Petitioner may issue a summary order if she "has reasonable grounds to believe that irreparable harm to the property or business of the insurer or to the interests of its policy or certificate holders, creditors or the public may occur unless he [she] issues with immediate effect" that order.

Further, under Section 512(a) of the Act, *as amended,* 40 P.S. § 221.12(a), this Court may issue an ex parte seizure order:

(a) Upon the filing by the commissioner in the Commonwealth Court of this Commonwealth of a petition alleging, (i) any ground that would justify a court order for a formal delinquency proceeding against an insurer under this article, and (ii) that the interests of policyholders, creditors or the public will be endangered by delay, and (iii) setting out the order deemed necessary by the commissioner, the court may issue forthwith, ex parte and without a hearing, the requested order which shall direct the commissioner to take possession and control of all or a part of the property, books, accounts, documents, and other records of an insurer, and of the premises occupied by it for the transaction of its business, and until further order of the court enjoin the insurer and its officers, managers, agents, and employes from disposition of its property and from transaction of its business except with the written consent of the commissioner.

Firstly, as Petitioner notes in her July 5, 1991 post-hearing brief, Mr. Mangiardi previously operated two admittedly illegal and insolvent insurance businesses. N.T. at

---

*We do not object to the seizure,* however, since the seizure we would like to sell our building in order to make our ends meet.
Thank you for your time and consideration.
 Sincerely,
 Paul J. Mangiardi
 Gretchen B. Mangiardi
cc: Donald Bailey, Esquire
Exhibit A to Petitioner's April 16, 1991 petition for second extension of seizure order (emphasis added).
 Since Mr. Mangiardi testified at the hearing that he did not intend to waive any legal rights in that letter, however, we will consider the propriety of the seizure.

347. Those entities were PARCare and First Health, Inc. The result of Petitioner's actions against these entities was a May 31, 1990 settlement agreement,[9] signed by Paul and Eric Mangiardi, their attorney and one of Petitioner's assistant counsels.

The relevant paragraphs of the agreement involving PARCare and First Health, Inc. are Nos. 9, 10 and 12. They read as follows:

9. Paul J. Mangiardi and Eric K. Mangiardi will surrender all Pennsylvania insurance agent and broker licenses within five business days of the date of this agreement.

10. Paul J. Mangiardi will not reapply for licensure as an insurance agent or broker in Pennsylvania for five years from the date of this agreement.

. . . .

12. Neither Paul J. Mangiardi nor Eric K. Mangiardi will serve in any capacity in connection with, or perform any services directly or indirectly for, or own any interest in, any plan or program of benefits for employees and/or employers that is or purports to be an ERISA plan (including any that are presently in operation), without first obtaining a written statement from a Deputy Commissioner of the Insurance Department that the plan or program is not subject to the Insurance Department's jurisdiction. The Insurance Department will issue a decision as to its jurisdiction over such plan or program within ten days of receipt of all information deemed by the Department to be necessary to make the decision.

Exhibit Q to the petition for liquidation.

We agree with Petitioner that Mr. Mangiardi's prior illegal entities and his failure to contact Petitioner as per paragraph twelve of the settlement agreement in part constitute reasonable grounds for seeking seizure. Several other reasons help to establish the basis for the reasonableness of Petitioner's grounds.

---

9. Exhibit Q to the petition for liquidation.

Secondly, Respondents failed to disclose information to Petitioner with regard to various trusts. This occurred despite Mr. Mangiardi's admittedly pre-seizure receipt of authorizations from his clients for the release of the requested information. N.T. at 357.

Finally, Petitioner received various consumer complaints about Respondents with regard to missing premiums. N.T. at 36–37 and 116–117; paragraphs 76 and 77 and Exhibits "P" and "Z" of the petition for ex parte seizure order. For the above reasons, we agree that Petitioner had reasonable grounds for seeking seizure of Respondents' assets.

## IV. GROUNDS FOR LIQUIDATION:

■ Under Section 512(b) of the Act, *as amended*, 40 P.S. § 221.12(b), "[a]n order of the court pursuant to a formal proceeding under this article [suspension of business—involuntary dissolutions] shall ipso facto vacate the seizure order." Thus, if we enter an order for liquidation of Respondents' assets, the seizure order is automatically voided.

According to Section 514 of the Act, *as amended*, 40 P.S. § 221.14, liquidation may be based on insolvency alone. Here, Mr. Smith, the insurance examiner, testified that Respondents' "liabilities exceed the assets by roughly $470,-000 at a minimum," thus evidencing insolvency. N.T. at 204.

Mr. Mangiardi did not dispute Respondents' insolvency, nor the fact that there was $384,000 in unpaid claims that related back to April of 1990. In response to questions about those unpaid claims, he merely testified that "I'm not blaming the Insurance Department for any claims. I'm blaming the Insurance Department for annihilating my business." N.T. at 361.

For the above reasons, we find the existence of grounds for liquidation. We hereby enter the following order:

## ORDER

AND NOW, this 22nd day of July, 1991, upon consideration of Petitioner's Petition for Liquidation of Respondents

in accordance with Section 520 of the Act, *as amended,* 40 P.S. § 221.20, the Court hereby finds that it is in the best interest of Respondents, their policyholders and creditors, and of the public, that Respondents be placed into liquidation in accordance with the provisions of Article V of the Act, *as amended,* 40 P.S. §§ 221.1–221.63, and that sufficient grounds exist for the entry of an Order of Liquidation including, without limitation, the fact that Respondents are insolvent, and are in such condition that the further transaction of their business would be hazardous to their policyholders, creditors and the public.

NOW, THEREFORE, it is ordered, judged and decreed:

1. Petitioner's Petition for the entry of an Order of Liquidation and finding of insolvency of Respondents is granted.

2. Constance B. Foster, Insurance Commissioner of the Commonwealth of Pennsylvania and her successors are hereby appointed Liquidator of Respondents and are directed immediately to take possession of their property, business and affairs as Liquidator, and to liquidate the business and affairs of the companies pursuant to the provisions of Article V of the Act, *as amended,* 40 P.S. §§ 221.1–221.63, and to take such action as the nature of this cause and the interest of the policyholders, creditors, stockholders, or the public may require.

## ASSETS OF THE ESTATE

3. Petitioner is vested as Liquidator with title to all property, assets, contracts and rights of action of Respondents, wherever located.

4. All banks, brokerage houses, or other companies or persons having in their possession assets which are, or may be the property of Respondents are hereby ordered to deliver the possession of the same immediately to the Liquidator, and are further ordered not to disburse the same without the written consent of or unless directed in writing by the Liquidator, and such persons and entities, and all

other persons and entities, are enjoined from disposing of or destroying any records pertaining to any business transactions between Respondents and banks, brokerage houses or other persons or companies having done business with Respondents or having in their possession assets which are or were the property of Respondents.

5. All agents, brokers or other persons having sold policies of insurance and/or collected premiums on behalf of the Respondents shall account for and pay all premiums and commissions unearned due to policies cancelled by this Order, or in the normal course of business, owed to Respondents directly to the Liquidator within 30 days of demand by the Liquidator or appear before this Court to show good cause, if any they may have, as to why they should not be required to account to the Liquidator or be held in contempt of Court for violation of the provisions of this Order. No agent, broker, or other person shall use premium moneys owed to Respondents for refund of unearned premium or any purpose other than payment to the Liquidator. The Liquidator shall serve this Order on all agents, brokers or others in accordance with Section 505 of the Act, *as amended*, 40 P.S. § 221.5, which shall constitute notice of its injunctive provisions.

6. All attorneys employed by Respondents as of this date shall, within 30 days notice of this Order, report to the Liquidator the name, company claim number and status of each file they are handling on behalf of Respondents. Said report shall also include an accounting of any funds received from or on behalf of Respondents. All attorneys described herein are hereby discharged as of the date of this Order unless their services are retained by the Liquidator.

7. Any premium finance company which has entered into a contract to finance a policy which has been issued by Respondents shall pay the premium owed to Respondents directly to the Liquidator.

8. Upon request by the Liquidator, any company providing telephonic services to Respondents shall provide a refer-

ence of calls from the number presently assigned to Respondents to any such number designated by the Liquidator or perform any other changes necessary to the conduct of the receivership.

9. Any entity furnishing water, electric, sewage, garbage or trash removal services to Respondents shall maintain such service and transfer any such accounts to the Liquidator as of the date of this Order unless instructed to the contrary by the Liquidator.

10. Any data processing service which has custody or control of any data processing information and records including but not limited to source documents, data processing cards, input tapes, all types of storage information, master tapes or any other recorded information relating to Respondents shall transfer custody and control of such records to the Liquidator.

11. The United States Postal Service is directed to provide any information requested regarding Respondents and to handle future deliveries of Respondents' mail as directed by the Liquidator.

12. Respondents, their officers, directors, agents and employees and all other persons having notice of this Order, are enjoined and restrained from the further transaction of business of Respondents and from dealing with, or disposing of, the property or assets of Respondents, or doing or permitting to be done any action which might waste or conceal its assets or doing any act or thing whatsoever to interfere with the taking control of, possession or management by the Liquidator of the property subject to this Liquidation Order.

13. Respondents, their officers, directors, trustees, employees, agents and attorneys are hereby ordered and enjoined to surrender peacefully the premises where Respondents conduct their business, and to deliver all keys thereto, and to deliver all keys to any safe deposit boxes, and to advise the Liquidator, her agents and attorneys, of the

combinations of any safes or safe keeping devices of Respondents.

14. Respondents, their officers, directors, trustees, employees, agents and attorneys are hereby ordered and enjoined to deliver and surrender peacefully to the Petitioner, her agents and attorneys, all and singular, all of the assets, books, records, files, credit cards, or other property of Respondents in their possession or control and to otherwise advise and cooperate with the Petitioner in identifying and locating any of Respondents' assets.

15. The rights and liabilities of Respondents and of their creditors, policyholders, shareholders, members and all other members interested in this estate are fixed as of the date of the filing of the Petition for Liquidation.

16. Except for contracts of insurance, all executory contracts to which Respondents were a party are hereby cancelled and will stand cancelled unless specifically adopted by the Liquidator within 30 days of the date of this Order. Any cancellation under this provision shall not be treated as an anticipatory breach of such contracts.

### NOTICE AND PROCEDURE FOR FILING CLAIMS

17. The Liquidator shall give notice by first class mail to all persons (including but not limited to individuals, aggregations of individuals, partnerships, corporations, associations, estates, trusts, and governmental units, and including all other entities not named), which may have claims against Respondents, contingent or otherwise, as revealed by their books and records, and shall advise such persons to present and file with the Liquidator, proper proofs of claim, in the form hereafter set forth, on or before 180 days from entry of this Liquidation Order. Said notice of the Liquidator to claimants shall specify 180 days from entry of this Liquidation Order to be the last day for the filing of such proofs of claim with the Liquidator at the offices designated in such notice.

18. The Liquidator shall notify all other persons who have, or may have a claim or claims against Respondents, or against an insurer policyholder of Respondents, by causing a notice to be published in a newspaper of general circulation where the insurer has its principal place of business, such notice shall: (a) specify the last day for the filing of claims; (b) shall advise all persons of the procedure by which all such persons may present their claims to the Liquidator; (c) shall advise all such persons of the Liquidator office wherein they may present their claim; and (d) shall advise all such persons of their right to present their claim or claims to the Liquidator.

19. Any and all persons, firms, corporations otherwise having or claiming to have any accounts, debts, claims or demands against Respondents, contingent or otherwise, or claiming any right, title, or interest in any funds or property in the possession of the Liquidator are ordered and required to file any claim or claims with the Liquidator at his offices, designated in the above described notice, no later than 180 days from entry of this Liquidation Order.

20. No person having or claiming to have any claim or claims against Respondents shall participate in any distribution of the assets of Respondents unless such claims are filed or presented in accordance with and within the time limited established by this Order, subject to the provisions for the late filing of claims contained in Section 537 of the Act, *as amended,* 40 P.S. § 221.37.

21. No action at law or equity shall be brought against Respondents or Liquidator, whether in this Commonwealth or elsewhere, nor shall any such existing action be maintained or further presented after issuance of this Order. All actions against the insurer or Liquidator shall be submitted and considered as claims in this liquidation proceeding.

22. No judgment or order against an insured or the insurer entered after the date of filing of the Petition for Liquidation, and no judgment or order against an insured or Respondents entered at any time by default or by collusion

need be considered as evidence of liability or quantum of damages, by the Liquidator.

23. No action or proceeding in the nature of an attachment, garnishment, or execution shall be commenced or maintained in the Courts of this state against the insurer, Liquidator, or its assets.