WISCONSIN EDUCATION ASSOCIATION INSURANCE TRUST; James Blank; Steve Balda; George Bauder; William Buckler; Mary Pat David; George Duvall; Bill Hjort; Dennis Hortum; Nelda Newell; Kenneth Oudenhoven; Jetty Pyle; and Janie Virlee, Appellees,

v.

IOWA STATE BOARD OF PUBLIC INSTRUCTION; Robert D. Benton; and Robert D. Bartlett

Iowa Insurance Department; Bruce W. Foundree; Thomas Alberts; and Tony Schrader, Appellants.

No. 85–2220.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1986.
Decided Nov. 7, 1986.

---

* The Hon. Fred J. Nichol, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Hon. Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota.

Fred M. Haskins, Des Moines, Iowa, for appellants.

James S. Ray, Washington, D.C., for appellees.

Karen L. Handorf, Washington, D.C., for amicus curiae.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

The issue before us is whether the Wisconsin Education Association Insurance Trust (WEAIT) is an "employee welfare benefit plan" as defined in section 3(1) of the Employee Retirement Income Security Act, 29 U.S.C. § 1002(1) (1982), even though WEAIT provides benefits to individuals who are not members of any labor union affiliated with WEAIT. If WEAIT is not an employee welfare benefit plan, ERISA does not preclude the Iowa Insurance Department from regulating WEAIT. The district court held that WEAIT is an employee welfare benefit plan, thus exempt from regulation by the Iowa Insurance Department. We reverse the judgment of the district court.

WEAIT is a non-profit, tax exempt trust maintained for the purpose of providing health, life, and disability benefits to employees of school districts in Iowa and several other states. WEAIT is maintained by several labor unions affiliated with the National Education Association, including the Iowa State Education Association. Participation in WEAIT is limited to employees of school districts that have collective bargaining agreements with a union sponsor of WEAIT that provide for participation. However, WEAIT does not limit participation to members of unions that sponsor WEAIT. Instead, WEAIT provides benefits to all employees of a participating school district, including employees who are not members of any labor union and employees who are members of a labor union unaffiliated with WEAIT. WEAIT provides benefits to these employees because it claims that school districts will not participate in WEAIT unless it extends coverage to all school district employees. WEAIT provides benefits to employees of six school districts in Iowa. Approximately thirty percent of those employees are not members of a union that sponsors WEAIT.[1] This thirty percent is comprised largely of

---

1. For example, in the Sioux City Community School District, 392 of the 1,243 employees receiving WEAIT benefits are not members of a WEAIT-sponsoring union. In the Keokuk Community School District, almost sixty percent (162 out of 274) of the employees receiving WEAIT benefits are not members of any union that maintains WEAIT.

persons in administrative, clerical, janitorial, and maintenance positions.

The State of Iowa sought to regulate WEAIT under Iowa's insurance laws as a result of WEAIT's contract with the Sioux City Community School District. Benefits had previously been provided to employees of that district by Washington National Insurance Company. As low bidder in 1983, WEAIT was awarded an eighteen month contract in which it would provide benefits to all Sioux City School District employees.

Administrative proceedings were instituted against WEAIT by the Iowa Insurance Department to determine whether WEAIT was operating an unauthorized and unlicensed insurance business in Iowa and whether, as an insurer, it had failed to pay premium taxes, all in violation of Iowa insurance law. During the course of the proceedings, an advisory opinion was requested from the Department of Labor concerning whether WEAIT qualified as an employee welfare benefit plan under ERISA. An initial opinion was issued based on the incorrect assumption that WEAIT limited the provision of benefits to members of WEAIT-sponsoring unions. *U.S. Dept. of Labor Adv. Op. to Mr. Robert C. Kelly* (July 5, 1983). The Department of Labor later issued an opinion based on the assumption that WEAIT provides benefits to both members and nonmembers of unions affiliated with WEAIT. *U.S. Dept. of Labor Adv. Op. to Mr. Tony Schrader* (Jan. 15, 1985). In revoking its earlier opinion, this opinion concluded that WEAIT is not an ERISA-covered employee welfare benefit plan and is thus subject to regulation by the Iowa Insurance Department. *Id.* at 2; *see also U.S. Dept. of Labor Adv. Op. to Mr. James S. Ray* (Jan. 15, 1985).

WEAIT brought this action against the Iowa Insurance Department, the Iowa State Board of Public Instruction, and others seeking, among other things, a declaratory judgment that WEAIT is an ERISA-covered employee welfare benefit plan and is not subject to regulation by state authorities, and an injunction restraining the Insurance Department and the Board of Public Instruction from conducting certain administrative proceedings against WEAIT.

The Iowa Insurance Department moved for summary judgment. The district court denied the motion, holding that a plain reading of ERISA, its legislative history, and its purpose all support the conclusion that WEAIT is an employee welfare benefit plan. It noted that if ERISA could be evaded by providing benefits to a single non-bargaining-unit employee, an unintended loophole would be created. The district court certified and we permitted this interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1982).

The Iowa Insurance Department argues that the district court erred as a matter of law in concluding that WEAIT is an employee welfare benefit plan as defined in section 3(1) of ERISA. Specifically, the Insurance Department contends that WEAIT is not "maintained by an employer or by an employee organization, or by both," nor is WEAIT "maintained for the purpose of providing [benefits] for its participants" under section 3(1) of ERISA. The Insurance Department also urges that the district court should have given greater deference to the Department of Labor's advisory opinions.

If WEAIT is an employee welfare benefit plan under section 3(1) of ERISA, the Iowa Insurance Department may not deem WEAIT to be an insurance company, an insurer, or engaged in the insurance business for purposes of state regulation. 29 U.S.C. § 1144(a), (b)(2)(B) (1982). If WEAIT is not an employee welfare benefit plan, ERISA does not preempt state regulation of WEAIT. *Id.* § 1144(a).[2] Among other things, section 3(1) of ERISA requires that to be an employee welfare bene-

---

**2.** Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." This preemption clause is, however, substantially qualified by an insurance saving clause, which provides that nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2)(A). This insurance saving

fit plan WEAIT must be "maintained for the purpose of providing [benefits] for its participants." *Id.* § 1002(1). We conclude that because thirty percent of the individuals receiving WEAIT benefits are not members of any labor union that maintains WEAIT, WEAIT does not provide benefits "for its participants" as contemplated in section 3(1) of ERISA.

Section 3(1) of ERISA first provides that an employee welfare benefit plan must be "maintained by an employer or by an employee organization, or by both." *Id.* WEAIT concedes that it is maintained only by an employee organization (i.e., labor unions); no employer is affiliated with WEAIT. Brief for Appellees at 9 n. 7. In addition to directing who may maintain an employee welfare benefit plan, section 3(1) requires that the benefits of a plan must be provided to the plan's "participants or their beneficiaries." *Id.* Section 3(7) of ERISA defines "participant" as:

> *any employee or former employee of an employer, or any member or former member of an employee organization,* who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

*Id.* § 1002(7) (emphasis added).

The question is whether section 3(7) creates a dichotomy between the meaning of "participant" as it applies to employer-maintained plans and as it applies to employee organization-maintained plans. As with any case of federal statutory interpretation, we "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985). We believe the language of section 3(7) provides for separate tests to determine who is a "participant," depending on whether the plan is maintained by an employer or maintained by an employee organization. The first two clauses in section 3(7) are mutually exclusive; each becomes applicable only when the subject of its prepositional phrase maintains the benefit plan in question. The words "employee or former employee" act *only* upon the phrase "of an employer," while the words "member or former member" apply *only* to the phrase "of an employee organization." Each clause stands alone; commas serve as a bastion. Congress has provided absolutely no indication, express or implicit, that the term "participant" includes *both* the employees of an employer *and* the members of an employee organization, regardless of what type entity maintains the plan.[3]

clause is itself qualified by the so-called deemer clause, which specifically prohibits a state from deeming an employee benefit plan "to be an insurance company or other insurer" or "to be engaged in the business of insurance" for purposes of state regulation. *Id.* § 1144(b)(2)(B).

The difficulty with section 514 is the linguistic overlap of the general preemption clause and the insurance saving clause. The Supreme Court recently faced this problem in *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), where it stated:

> The two pre-emption sections, while clear enough on their faces, perhaps are not a model of legislative drafting, for while the general pre-emption clause broadly pre-empts state law, the saving clause appears broadly to preserve the States' lawmaking power over much of the same regulation. While Congress occasionally decides to return to the States what it

has previously taken away, it does not normally do both at the same time.

*Id.* at 2389 (footnote omitted).

In *Metropolitan Life,* the Court held that a state law which mandated minimum benefits to be provided in certain insurance policies was a law that "regulates insurance" and was not preempted as applied to plans governed by ERISA. *Id.* at 2388–93. The questions answered in *Metropolitan Life* are not raised here. We only address whether WEAIT is an employee benefit plan such that 29 U.S.C. § 1144(b)(2)(B) prohibits the Iowa Insurance Department from deeming WEAIT "to be an insurance company or other insurer" or "to be engaged in the business of insurance" for purposes of subjecting WEAIT to Iowa's insurance laws.

**3.** It is not unusual that in defining the term "participant," Congress would provide different meanings depending on what type entity main-

Section 3(1)'s framework would be destroyed if we accepted WEAIT's contention that a labor union satisfies the section 3(1) participant requirement by providing benefits either to its members or to the non-member employees of an employer unaffiliated with the plan.[4] The definition of an employee welfare benefit plan is grounded on the premise that the entity that maintains the plan and the individuals that benefit from the plan are tied by a common economic or representation interest, unrelated to the provision of benefits. An employee depends on his employer; a union member relies on his union. This nexus is non-existent under WEAIT's reading of section 3(1) and section 3(7). An employee unaffiliated with a labor union that sponsors WEAIT has no economic interest in that union and does not rely on that union to represent his interests. The only relationship between the sponsoring labor union and these non-member recipients stems from the benefit plan itself. Such a relationship is similar to the relationship between a private insurance company, which is subject to myriad state insurance regulations, and the beneficiaries of a group insurance plan. Yet WEAIT contends that its plan, somehow different, should be free from state insurance regulations and subject only to ERISA regulations, which do not regulate the substance of welfare benefit plans. Even though WEAIT is a nonprofit entity providing benefits to a defined group of employees, the relationship between WEAIT and certain of its beneficiaries mirrors the situation Congress described after the passage of ERISA:

> [C]ertain entrepreneurs have undertaken to market insurance products to employers and employees at large, claiming these products to be ERISA covered

plans. For instance, persons whose primary interest is in profiting from the provision of administrative services are establishing insurance companies and related enterprises. The entrepreneur will then argue that his enterprise is an ERISA benefit plan which is protected, under ERISA's preemption provision, from state regulation. We are concerned with this type of development, but on the basis of the facts provided us, we are of the opinion that these programs are not "employee benefit plans" as defined in Section 3(3). As described to us, these plans are established and maintained by entrepreneurs for the purpose of marketing insurance products or services to others. They are not established or maintained by the appropriate parties to confer ERISA jurisdiction, nor is the purpose for their establishment or maintenance appropriate to meet the jurisdictional prerequisites of the Act. They are no more ERISA plans than is any other insurance policy sold to an employee benefit plan.

\*     \*     \*     \*     \*     \*

We are mindful of the potentially harmful effects of an overly broad interpretation of the term "employee benefit plan" when coupled with the policy of section 514. As we have already noted, we do not believe that the statute and legislative history will support the inclusion of what amounts to commercial products within the umbrella of the definition. Where a "plan" is, in effect, an entrepreneurial venture, it is outside the policy of section 514 for reasons we have already stated. In short, to be properly characterized as an ERISA employee

---

tains the plan. *Cf.* 29 U.S.C. § 1002(16)(B) (1982) (providing three different meanings for the term "plan sponsor" depending on whether the plan is maintained by an employer, an employee organization, or multiple employers or jointly by an employer and an employee organization).

4. In addition to arguing for an over-inclusive reading of section 3(7), WEAIT also urges that the section 3(1) participant requirement only requires that some, not all, of the individuals benefitting from the plan satisfy the "participant" definition. This contention only rephrases WEAIT's argument and raises the same considerations concerning the meaning of section 3(7), and we thus treat it concomitantly.

benefit plan, a plan must satisfy the definitional requirement of section 3(3) in both form and substance.

H.R.Rep. No. 1785, 94th Cong., 2d Sess. 48 (1977).

This evidence of Congress' intent is especially significant in light of the absence of any legislative statement contemporaneous with ERISA's passage indicating that Congress intended employee welfare benefit plans to encompass plans, like WEAIT, in which benefits are provided to individuals unrelated to the entity providing those benefits. WEAIT points to several of the numerous congressional statements indicating that ERISA is a comprehensive remedial statute intended to be construed liberally to cover all employee benefit plans not expressly exempted. *See, e.g.*, H.Conference Rep. No. 1280, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 5038, 5038–39; H.R.Rep. No. 533, 93d Cong., 1st Sess. (1973), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4656; S.Rep. No. 127, 93d Cong., 1st Sess. (1973), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4838, 4854.[5] These generalizations, which only beg the question of what constitutes an employee welfare benefit plan, are of little help in our attempt to ascertain the meaning of a precise statutory definition, and they certainly do not dictate that we stray away from the natural reading of section 3(7). *Cf. Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 2392–93, 85 L.Ed.2d 728 (1985) (generalized statements "far too frail" to support an unnatural reading of ERISA's preemption section). Moreover, we realize that to accept WEAIT's reading of section 3(7) is tantamount to depriving the State of Iowa of the ability to regulate a plan having a striking resemblance to a group insurance plan.

These congressional generalizations do not provide "clear and manifest" evidence to overcome the presumption that Congress did not intend to preempt an area of traditional state regulation. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).

No court has held that section 3(7)'s definition of "participant" includes the employees of a non-sponsoring employer when a plan is maintained solely by an employee organization. In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982), the Court of Appeals for the Eleventh Circuit noted that the individuals benefitting from an employee welfare benefit plan "must *include* union members, employees, former employees or their beneficiaries." *Id.* at 1373 (emphasis added). This ambiguous statement was made, however, in the context of summarizing the elements of an employee welfare benefit plan while discussing an issue entirely unrelated to the section 3(1) participant requirement. We cannot conclude that this dictum was an attempt to analyze the meaning of section 3(1)'s participant requirement, a requirement the court quickly dismissed as "either self-explanatory or defined by statute." *Id.* at 1371. We can conclude, however, that our reading of section 3(7) is in accord with those cases recognizing that an overly broad interpretation of the term "employee welfare benefit plan" ignores congressional intent to limit such plans to situations where the nexus between the plan's sponsor and all of its beneficiaries excludes it from the state-regulated entrepreneurial arena in which private insurance companies operate. *See, e.g., Matthew 25 Ministries, Inc. v. Corcoran*, 771 F.2d 21 (2d Cir.1985); *Donovan v. Dillingham*, 688 F.2d at 1367; *National Business Conference v. Anderson*, 451 F.Supp. 458 (S.D.Iowa 1977); *Bell v. Em-*

---

5. WEAIT also relies on a statement in a House Ways and Means Committee report on the ERISA bill, which discusses the test to be applied to determine whether a plan is maintained pursuant to a collective bargaining agreement. H.Rep. No. 807, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News, 4670, 4718. The statement deals with the tax aspects of employer-maintained qualified retirement plans, and is irrelevant to the issue in this case.

*ployee Security Benefit Association,* 437 F.Supp. 382 (D.Kan.1977).

Our decision is premised on ERISA's language and Congress' intent. There is no need to resort to the Department of Labor's interpretations. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Still, our decision comports with the Department of Labor's opinion that WEAIT is not an employee welfare benefit plan since WEAIT provides benefits to individuals who are neither represented nor employed[6] by any of the labor unions that sponsor WEAIT. *U.S. Dept. of Labor Adv. Op. to Mr. Tony Schrader* (Jan. 15, 1985). The interpretations and opinions of an agency charged with administering a statute "constitute a body of experience and informed judgment to which the courts and litigants may properly resort for guidance," *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), and accordingly, situations exist where it is prudent to consult the expert opinion of the Department of Labor in construing the statutory meaning of an "employee benefit plan." *See, e.g., Schwartz v. Gordon,* 761 F.2d 864 (2d Cir.1985); *California Hospital Association v. Henning,* 770 F.2d 856 (9th Cir.1985), *amended,* 783 F.2d 946 (1986).

We are unsympathetic to WEAIT's claim that our decision creates a loophole through which ERISA regulation can be avoided by WEAIT and entities like WEAIT. This claim is entirely inconsistent with WEAIT's persistent attempt to subject itself to, rather than avoid, ERISA

regulation. Moreover, our decision today rests on a plain reading of ERISA's language considered against the backdrop of express and implicit congressional intentions. If a so-called loophole exists, it exists consistent with ERISA's language and congressional intent. Arguments as to the wisdom of section 3(1)'s participant requirement should be addressed to Congress, not the courts. *Cf. Metropolitan Life Insurance Co. v. Massachusetts,* 105 S.Ct. at 2393 (arguments concerning wisdom of disuniformities in ERISA's preemption provision must be directed at Congress).

We thus conclude that WEAIT is not an employee welfare benefit plan under section 3(1) of ERISA. ERISA does not exempt WEAIT from regulation by the Iowa Insurance Department. 29 U.S.C. § 1144. Because of this conclusion, we need not consider whether the fact that WEAIT is maintained by multiple labor unions prohibits WEAIT from being an "employee organization" as defined in section 3(4) of ERISA, 29 U.S.C. § 1002(4).

The judgment of the district court is reversed.

---

**6.** WEAIT raises the argument that the Department of Labor's advisory opinion letter counters against a strict reading of section 3(7) since it implies that the "participant" requirement would be satisfied if all individuals benefiting from WEAIT were either members *or employees* of the labor unions sponsoring WEAIT. We read this as a zealous attempt by the Depart-

ment of Labor to recognize the nexus that must exist between the labor union sponsoring a plan and the individuals benefitting from the plan. Obviously, if a labor union employer provided a plan for its employees, this would be deemed an employer-maintained plan and the employees would be deemed "participants" by virtue of the employer-employee relationship.