**ATLANTIC HEALTH CARE BENEFITS TRUST, United Health Care Association of America, National Insurance Consultants, Inc., Edward M. Zinner, and William Moulton, Plaintiffs,**

v.

**Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania; and the Insurance Department of the Commonwealth of Pennsylvania, Defendants.**

**Charles R. ZIMMERMAN, Plaintiff,**

v.

**Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania; and the Insurance Department of the Commonwealth of Pennsylvania, Defendants.**

**Harold W. KING, Plaintiff,**

v.

**Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania; and the Insurance Department of the Commonwealth of Pennsylvania, Defendants.**

Civ. A. No. 3:CV–92–0551.

United States District Court, M.D. Pennsylvania.

Dec. 23, 1992.

Don Bailey, Bailey & Hardy, Harrisburg, PA, for plaintiffs.

John G. Knorr, III, Linda Cadden Barrett, Sandra Wise Stoner, Office of the

Atty. Gen., Harrisburg, PA, for Constance B. Foster.

Gwendolyn T. Mosley, John G. Knorr, III, Linda Cadden Barrett, Linda C. Barrett, Sandra Wise Stoner, Office of Atty. Gen., Harrisburg, PA, for Insurance Dept. of the Com. of Pennsylvania, Chris Monahan and Cynthia M. Maleski.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Defendants' motion to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs seek a declaration that Pennsylvania insurance laws regulating its benefits plan are preempted by ERISA, and further seek to enjoin the Commissioner from interfering with their benefits plan. Defendants assert that they are immune from suit pursuant to the Eleventh Amendment, and that Plaintiffs' complaint fails to state a claim since state licensing regulations are not preempted by ERISA as Plaintiffs allege. The matter has been fully briefed and is now ripe for consideration.

### Background

The following facts are undisputed by the parties; any contested points will be noted by the court: On February 1, 1991, Edward Zinner and William Moulton created Atlantic Health Care Benefits Trust ("Atlantic"). Plaintiff United Health Care Association of America is a group of employers who provide their employees coverage through Atlantic. Plaintiff National Insurance Consultants administers Atlantic. Plaintiffs Zimmerman and King are insurance agents working with Atlantic. On June 28, 1991, the Pennsylvania Insurance Department claimed that Plaintiffs were operating an insurance company without the proper license required by 40 Pa. Stat.Ann. § 46. Subsequently, on November 27, 1991, the Commissioner ordered Atlantic to cease and desist solicitation of

subscribers, renewal of policies, or acceptance of premium payments.

Defendants in the captioned case are Cynthia M. Maleski, the Commissioner for the Pennsylvania Insurance Department, who has been sued both in her individual and official capacities, and the Insurance Department itself.[1]

Plaintiffs seek declaratory relief, to obtain clarification of the interplay between federal and state law, and injunctive relief, to prevent Defendants' allegedly unlawful interference in the benefits plan. Plaintiffs contend that Pennsylvania's regulation of Atlantic is preempted, and thus precluded by the Employee Retirement Security Act of 1974 ("ERISA"), which purportedly governs Plaintiffs' scheme.

### Discussion

#### I. Eleventh Amendment

##### A. INTRODUCTION

Defendants assert that this court has no subject matter jurisdiction over the captioned action because of Eleventh Amendment immunity afforded states and their agencies. As the present suit implicates a state body and a state official, Defendants seek dismissal of the captioned case pursuant to Federal Rule of Civil Procedure 12(b)(1).

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by citizens of another State, or by citizens or subjects of any Foreign State.

This amendment, while facially applicable to both states and state officials, has been differentially interpreted in the two instances.

##### B. SUIT AGAINST PENNSYLVANIA INSURANCE DEPARTMENT

■ The Eleventh Amendment has always been interpreted as precluding suit against a *state* without a waiver of immuni-

---

1. Ms. Maleski has replaced Ms. Foster who was originally named as Insurance Commissioner in the captioned suit.

ty by the state. Furthermore, the *Ex Parte Young* doctrine, discussed below, does not alter the fundamental prohibition against directly suing a state. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See also Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978).

■ Nor may a *state body* be sued without a waiver of immunity. This bar to suit just as clearly applies to Commonwealth agencies as it does to the Commonwealth itself. *See Helfrich v. Pennsylvania, Department of Military Affairs*, 660 F.2d 88, 90 (3d Cir.1981) (Department of Military Affairs immune from suit due to Eleventh Amendment); *Pugh*, 438 U.S. at 782, 98 S.Ct. at 3057–58 (Board of Corrections immune due to Eleventh Amendment). Plaintiffs concede that the Pennsylvania Insurance Department is an arm of the Commonwealth. Complaint at ¶ 8. Moreover, there is no indication that the Commonwealth *has* consented to this suit. Thus, Defendants are correct that Plaintiffs' suit must fail as to defendant Insurance Department of Pennsylvania. The Insurance Department will be dismissed from the case.

## C. SUIT AGAINST PENNSYLVANIA INSURANCE COMMISSIONER

■ The words of the Eleventh Amendment would appear to preclude federal courts from granting injunctive relief to ensure that states, through state officials, conform to constitutional or federal law. However, case law has not so interpreted the Eleventh Amendment.

The seminal case, *Ex Parte Young*, held that any state official acting inconsistently with the federal Constitution is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Ex Parte Young*, 209 U.S. at 160, 28 S.Ct. at 454. Thus, *Ex Parte Young* created a fiction to enable state officials to be required to comply with federal law—if a state officials's actions are not in compliance with federal law, the acts are deemed not to be sanctioned by the state, thereby permitting a personal suit against the offi-

cials to go forward. Because of the fiction of *Ex Parte Young*, technically, injunctive relief is only available against officials in their individual capacity; however, courts have gradually approached this fiction more leniently and permitted claims against state officials acting solely in their official capacity.

The principle enunciated in *Ex Parte Young*, permitting suits for injunctive relief against state officials who violate federal constitutional rights, has been expanded to apply to violations of federal statutes as well. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899 n. 14, 77 L.Ed.2d 490 (1983); *Almond Hill School v. United States Dept. of Agric.*, 768 F.2d 1030, 1034 (9th Cir.1985); *Allegheny County Sanitary Auth. v. United States Envtl. Protection Agency*, 732 F.2d 1167, 1174 (3d Cir.1984).

Moreover, declaratory relief, ancillary to injunctive relief, against a state official is not barred by the Eleventh Amendment. *Green v. Mansour*, 474 U.S. 64, 72–73, 106 S.Ct. 423, 427–28, 88 L.Ed.2d 371 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 900, 88 L.Ed.2d 933 (1986); *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062, 1066 (6th Cir.1984).

■ Although it appears that much of the challenged conduct may have occurred prior to defendant Maleski's tenure on the Commission, the prospective nature of the relief which Plaintiffs seek clearly implicates her as she is the individual charged with carrying out the disputed conduct. Moreover, "personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action." *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir.1988).

Because the Eleventh Amendment does not preclude Plaintiffs from seeking injunctive or declaratory relief against defendant Maleski, this court's subject matter jurisdiction over her is not defeated by the Eleventh Amendment.

## II. Dismissal under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal foundation of the plaintiff's claims; it is not intended to question the plaintiff's facts. *United States v. Marisol, Inc.*, 725 F.Supp. 833, 836 (M.D.Pa.1989). The court must determine if the plaintiff's claim would fail even if all facts alleged in the complaint were true. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The 12(b)(6) movant carries the burden of showing this legal insufficiency of the claims asserted. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980).

To prevent unwarranted dismissal of the plaintiff's claims, the allegations put forth in the complaint are taken as true and inferences from those facts are viewed in the light most favorable to the plaintiff. *Mortensen*, 549 F.2d at 891; *Truhe v. Rupell*, 641 F.Supp. 57, 58 (M.D.Pa.1985). However, "conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true." *Pennsylvania House, Inc. v. Barrett*, 760 F.Supp. 439, 449–50 (M.D.Pa.1991) (citing *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–02). A Rule 12(b)(6) motion will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. at 102.

## III. ERISA preemption

### A. INTRODUCTION

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, regulates a broad range of employee plans. As one court has described:

> Congress enacted ERISA to protect working men and women from abuses in the administration and investment of private retirement plans and employee welfare plans. Broadly stated, ERISA established minimum standards for vesting of benefits, funding of benefits, carrying out fiduciary responsibilities, reporting to the government and making disclosures to participants.

*Donovan v. Dillingham*, 688 F.2d 1367, 1370 (11th Cir.1982).

To help achieve these goals, Congress provided for federal preemption over state laws regulating specified employee benefit and welfare plans by mandating that ERISA shall "supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). However, to maintain states' traditional role in regulating the insurance industry, Congress limited the scope of this preemption by providing that nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A).

To ensure that this savings clause is not used in so broad a manner as to defeat the purpose of ERISA, § 1144(b)(2)(B) (also known as the "deemer clause") provides that no employee benefit plan:

> shall be *deemed* to be an insurance company or other insurer, bank trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B). Thus, this provision safeguards against the possibility that states will bypass federal preemption under ERISA by merely claiming that particular plans are insurers.

Preemption by ERISA law has a broad reach. It encompasses all laws, decisions or regulations of:

> a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this title.

29 U.S.C. § 1144(c)(2).

### B. FORM OF ANALYSIS

There are several steps in determining whether ERISA preempts state regulation

of Atlantic. First, the court must decide if Plaintiffs' plan is an "employee benefit plan" within ERISA's definition of that term. Plaintiff provides two alternative rationales that it is: either (1) Plaintiff merely oversees a trust to which individual employers contribute as part of their *own individual employee benefit plans* and thus, the trust is just a consolidation of parts of these plans making it a plan, or (2) it is itself a plan administered by an employer group. If Plaintiffs do not have an employee benefit plan, then ERISA does not apply and state regulation is permitted. If the plan is an employee benefit plan, then the court must decide if it is a multiple employer welfare arrangement of the type which may be regulated by the state.

## C. IS ATLANTIC A TRUST ESTABLISHED UNDER AN EMPLOYEE BENEFIT PLAN?

■ Plaintiffs assert that they have established a trust to which individual employers contribute as part of their individually maintained employee benefit plans covered by ERISA. They contend that, assuming Atlantic is itself not an employee benefit plan under ERISA, in the alternative, it is a trust established under such a plan.

This argument is untenable. Plaintiffs are trying to weasel themselves into the ERISA domain by creatively labeling their enterprise. Their project already has a definition: a multiple employer welfare arrangement ("MEWA"). 29 U.S.C. § 1002(40)(A) provides:

The term 'multiple employer welfare arrangement' means an employee welfare benefit plan, or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) (29 U.S.C. § 1002(1)) to the employees of

two or more employers (including one or more self-employed individuals), or to their beneficiaries, except that such term does not include any such plan or other arrangement which is established or maintained—

(i) under or pursuant to one or more agreements which the Secretary (of Labor) finds to be collective bargaining agreements, or

(ii) by a rural electric cooperative.

29 U.S.C. § 1002(40)(A). Moreover, all assets of an employee benefit plan must be deposited in a trust. 29 U.S.C. § 1103(a).[2] Thus, what Plaintiffs in actuality administer is a trust which is part of a MEWA.

Plaintiffs unpersuasively cite to a statutory section forbidding a state from regulating an employee welfare benefit plan which is not a multiple employer welfare arrangement ("MEWA") but which uses a MEWA to administer its benefits. 29 U.S.C. § 1144(b)(6)(C).[3] However, Plaintiff has not shown that the numerous single-employer plans over which it claims to be a fiduciary are employee benefit plans under ERISA. *See generally MDPhysicians & Associates v. State Bd. of Ins.*, 957 F.2d 178, 182 n. 4 (5th Cir.1992) and cases cited therein; *Credit Managers Ass'n v. Kennesaw Life and Accident Ins. Co.*, 809 F.2d 617, 625–26 (9th Cir.1987). More importantly, this section prevents *individual* employee benefit plans, covered by ERISA, from being state regulated merely because they utilize a MEWA in obtaining benefits; however, the section *does not* provide immunity to MEWAs themselves from state regulation.

Therefore, Plaintiffs' remaining question is whether this MEWA is or is not an employee benefit plan within the reach of ERISA.

---

**2.** Plaintiff makes no argument that any of the exceptions to this requirement are applicable in the captioned case. *See* 29 U.S.C. § 1103(b).

**3.** That section provides that nothing: "shall affect the manner or the extent to which the provisions of this subchapter apply to an employee welfare benefit plan which is not a MEWA and which is a plan, fund, or program participating in, subscribing to, or otherwise using a MEWA to fund or administer benefits to such plan's participants and beneficiaries." 29 U.S.C. § 1144(b)(6)(C).

## D. IS PLAINTIFFS' PLAN AN ERISA COVERED EMPLOYEE BENEFIT PLAN?

■ ERISA covers three types of employee benefit plans: (1) employee welfare benefit plans—providing health, hospitalization, and disability benefits, (2) employee pension benefit plans—providing retirement or deferred income, or (3) plans which provide both. 29 U.S.C. § 1002. Plaintiffs claim that its plan falls within the first category—an employee welfare benefit plan. Defendants vigorously refute this claim.

Section 1002 defines an employee welfare benefit plan as:

> any plan, fund, or program which was heretofore or is hereafter *established or maintained by an employer* or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....

29 U.S.C. § 1002(1) (emphasis added). Thus, an ERISA employee welfare benefit plan must be:

(1) a 'plan or fund or program'

(2) established or maintained

(3) by an employer or by an employee organization, or by both,

(4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death [and other benefits not relevant here]

(5) to participants or their beneficiaries.

*Donovan*, 688 F.2d at 1371.[4] The parties do not appear to dispute that Plaintiffs' plan meets three of the criteria: (1) it is a fund, (2) it does provide benefits, (3) to employees of participating employers. The remaining two criteria—whether an employer or employer organization established or maintained the plan at issue—is the focus of the disagreement between the two parties.

ERISA is applicable to:

> any employee benefit plan if it is *established or maintained—*
>
> (1) by any employer engaged in commerce or in any industry or activity affecting commerce....[5]

29 U.S.C. § 1003(a) (emphasis added). Moreover, ERISA provides the following definition of employer as:

> any person acting directly as an employer, or *indirectly in the interest of an employer*, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

29 U.S.C. § 1002(5) (emphasis added). Thus, to fall within ERISA, Plaintiffs' plan must either be established or maintained by either an employer or an association acting in the interests of employers.

---

**4.** The Commonwealth Court in this state has offered a different framework for determining whether a particular plan is covered by ERISA; a covered employee benefit plan has five characteristics:

(a) it was provided by an employer or homogeneous employee organization, such as a union;

(b) it was non-commercial in nature;

(c) it did not involve solicitation;

(d) it was not intended to be actuarially sound;

(e) because the employers could look only to the fund, and not to the provider of that fund, the rates were substantially lower than insurance rates.

*Foster v. West Branch Administrators,* 141 Pa. Cmwlth. 381, 597 A.2d 721, 724 (1991) (citing *Bell v. Employee Security Benefit Ass'n,* 437 F.Supp. 382, 391 (D.Kan.1977)). However, as *Foster's* first characteristic—involvement of an employer—is analogous to the "employer" prong of *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982), and as analysis herein will focus only on this prong, other characteristics set forth in *Foster* need not be considered.

**5.** The statute also provides that a plan can be maintained by an employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; however, these sections are inapplicable to the case at bar.

The record contains no indication that Atlantic acted as an employer to the employees who benefitted from the plan. Nor are there any facts to demonstrate that employers *established* the plan.[6]

Thus, for ERISA to apply, Atlantic must be maintained by an employer group acting in the interest of the employers. In analyzing this issue, it is important to distinguish between two different types of plans: (1) individual employers' plans which obtain benefits from a MEWA, and (2) the MEWA itself. The former is not at issue in the captioned action, as there is no apparent dispute between the Commonwealth and any of the individual employers who participate in Plaintiffs' plan. Thus, the court must determine whether the MEWA itself is an employee benefit plan.

Courts have tended to examine two important characteristics in determining whether a particular organization is acting in the interests of the employer so as to bring its plan within the scope of ERISA.

First, involvement of the individual participating employers in the administration of the plan helps to demonstrate that the plan administration is acting in the best interests of the employers. As one court has explained, "To allow an entrepreneurial venture to qualify as an 'employer' by establishing and maintaining a multiple employer welfare arrangement without input by the employers who subscribe to the plan would twist the language of the statute and defeat the purposes of Congress." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 185 (5th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992). Moreover, an employer association "cannot possibly act in the interest of employers when such employers have no voice in the management or operation of the plan because no basis for an agency relationship exist." *MDPhysicians, Inc. v. Wrotenbery,* 762 F.Supp. 695, 698 (N.D.Tex.1991), *aff'd,* 957 F.2d 178 (5th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992) (citations omitted).

■ A multi-employer plan is not within the ambit of ERISA if employers have no day-to-day involvement in its administration, *Taggart Corp. v. Life Health Benefits Admin. Inc.,* 617 F.2d 1208, 1210 (5th Cir. 1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981);[7] if the employer group has but a "minimal, ministerial" role, *Otto v. Variable Annuity Life Ins. Co.,* 814 F.2d 1127, 1135 (7th Cir.1986), *cert. denied,* 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988); if the employer merely advertises the plan and collects contributions, *id.;* or if a multiple employer trust acts as "mere conduit" for subscribers, *Taggart* at 1210. *See also Bell v. Employee Sec. Ben. Ass'n,* 437 F.Supp. 382, 392–93 (D.C.Kan.1977) (not ERISA plan since insufficient involvement by employee group); *Hamberlin v. VIP Ins. Trust,* 434 F.Supp. 1196, 1198 (D.Ariz.1977) (not ERISA plan since employers did not participate in administration of plan nor contribute to it); *Matthew 25 Ministries, Inc. v. Corcoran,* 771 F.2d 21, 22 (2d Cir. 1985) (the employers played "no role in the management of the trust,"); *Baucom v. Pilot Life Ins. Co.,* 674 F.Supp. 1175, 1181 (M.D.N.C.1987) ("no active involvement of employers in plan's founding or administration").[8] Note, however, that a mere minis-

---

6. There is the argument to this effect which is rejected above by the court.

7. Plaintiffs assert that *Taggart* was wrongly decided as evidenced by criticism of it by *Donovan v. Dillingham,* 688 F.2d 1367, 1375 (1982). *Donovan,* however, did not reject the holding nor the reasoning of *Taggart.* Rather, the former case offered a limiting interpretation of the latter. Specifically, *Donovan* agreed with *Taggart* that a multi-employer trust from which employers merely purchase insurance is not an employee welfare benefit plan under ERISA. However, *Donovan* went on to criticize any reading of

*Taggart* which would preclude finding that an individual employer's plan, which is part of a multi-employer trust, is an employee welfare benefit plan under ERISA. The question of whether individual employers' plans, providing coverage through Atlantic, are within the scope of ERISA is not before this court.

8. *But see Kanne v. Connecticut Gen'l Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir.1988), *cert. denied,* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989) (ERISA plan even though employer's function only "minor and ministerial."). However, the multi-employer trust in *Kanne* was

terial involvement *may* be sufficient to bring an employer's *individual* plan within the scope of ERISA although the same conduct will not bring a multi-employer trust into the scope of ERISA. *See, e.g., Credit Managers Ass'n,* 809 F.2d at 625; *Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 242–43 (5th Cir.1990) (employer's role minimal but sufficient to demonstrate that its purchase of benefits from a multi-employer trust was covered by ERISA; the issue was not, however, whether the trust was covered by ERISA).

Second, many cases have required some cohesive bond between the employers, other than their common participation in the disputed plan, to help ensure that the plan administration is acting in the best interest of the employers. As one court has explained:

> The definition of an employee welfare benefit plan is grounded on the premise that the entity that maintains the plan and the individuals that benefit from the plan are *tied by a common economic or representation interest, unrelated to the provisions of benefits.* . . . [A] relationship [without such ties] is similar to the relationship between a private insurance company, which is subject to myriad state insurance regulations, and the beneficiaries of a group insurance plan.

*Wisconsin Educ. Ass'n Ins. Trust v. Iowa State Bd. of Public Instruction,* 804 F.2d 1059, 1063 (8th Cir.1986) (emphasis added). Participating employers should not be "disparate and unaffiliated," *Matthew 25 Ministries, Inc.,* 771 F.2d at 22, but should be linked by some common interest. As the court in *MDPhysicians & Associates, Inc. v. State Bd. of Ins.* has stated:

> The most common example is the economic relationship between employees and a person acting directly as their employer. *See Hansen* [*v. Continental Ins. Co.*], 940 F.2d 971, 978 [ (5th Cir. 1991) ]. The representational link between employees and an association of employers in the same industry who establish a trust for the benefit of those employees also supplies the requisite connection. *See National Business Ass'n Trust v. Morgan,* 770 F.Supp. 1169, 1174–75 (W.D.Ky.1991) . . . This special relationship protects the employee, who can rely on the 'person acting directly as an employer' or the person 'acting indirectly in the interests of' that employer to represent the employee's interest relating to the provision of benefits. *Cf. Wisconsin Educ. Ass'n,* 804 F.2d at 1063.

*MDPhysicians & Associates, Inc. v. State Bd. of Ins.,* 957 F.2d at 186. *See also Bell,* 437 F.Supp. at 392–93 (not ERISA plan since insufficient commonality of employees); *Baucom,* 674 F.Supp. at 1179–1180 (same); *Nat'l Business Conf. Employee Benefits Ass'n v. Anderson,* 451 F.Supp. 458, 461 (S.D.Iowa 1977) (employees must have common interest in employment relationship for ERISA plan).

In the captioned case, there is no indication that Atlantic is characterized by either of these two elements. There is no evidence that the employers who comprise defendant United Healthcare Association have participated in either the establishment or the administration of the Atlantic trust in any way but in merely submitting the monthly payments due. Moreover, it does not appear that the members of United Health Care Association are related in any way other than similarly subscribing to Atlantic's benefit plan.

Nonetheless, as the motion before this court is one to dismiss, not one for summary judgment, and since there are few to no facts before this court on which to determine the exact characteristics of the Atlantic plan, the court is unable to determine whether Atlantic constitutes an employee benefit plan within the ambit of ERISA.

administered by an employer group—the Associated Builders and Contractors of which the plaintiff's employer, a carpet manufacturer, was a member. Thus, it appears that the plan was characterized by a certain commonality of the employers—being in the same field of business. In contrast, there is no evidence that the employers comprising plaintiff United Health Care Association are similarly associated.

However, this obstacle does not preclude disposition of the motion at issue.

### E. IS PLAINTIFFS' PLAN AN ERISA COVERED MULTIPLE EMPLOYER WELFARE ARRANGEMENT?

■ Since there are insufficient facts to determine whether Atlantic is an ERISA plan, the court will assume *for purposes of this motion* that Atlantic is an employee benefit plan covered by ERISA. Moreover, the court has already determined at "III(C)" that Atlantic is not "just" a trust but is a MEWA. Thus, the final question is whether Atlantic is a non-fully insured multiple employer welfare arrangement thereby permitting state regulation which is not inconsistent with ERISA requirements.

Congress amended the preemption language of ERISA to permit limited state regulation of MEWA's under state insurance law:

> Notwithstanding any other provision of this section—
>
> .   .   .   .   .
>
> (ii) in the case of any other employee welfare benefit plan which is a multiple employer welfare arrangement, in addition to this title, *any law of any State which regulates insurance may apply to the extent not inconsistent with the preceding sections of this subchapter.*[9]

29 U.S.C. § 1144(b)(6)(A) (emphasis added).

Thus, state regulation of MEWA's is permitted as long as the regulations are not inconsistent with ERISA. Plaintiffs assert that the challenged regulations *are* inconsistent with ERISA, or, in the alternative that permissible state regulations must explicitly mention application to MEWAs. Neither of these arguments are persuasive.

1. Are Defendants' proposed regulations to Plaintiffs' plan inconsistent with those provided by ERISA?

■ Plaintiffs assert that the laws which Defendants seek to apply to them are inconsistent with ERISA. However, requiring a plan to obtain a state license has been held *not to be inconsistent* with the provisions of ERISA. The court in *MDPhysicians, Inc. v. Wrotenbery* determined that Texas licensing provisions applied to a MEWA, finding that:

> The Texas requirement that the MDP Plan apply for a certificate of authority to conduct business in the state of Texas is not inconsistent with ERISA's requirement that an ERISA plan file with the Secretary of Labor, a plan description, modifications, annual reports and supplemental reports, as required in 29 U.S.C. § 1021(b)

*Wrotenbery,* 762 F.Supp. at 699. *See also National Business Ass'n Trust,* 770 F.Supp. at 1169 (MEWA not exempt from the state's licensure requirements since consistent with 29 U.S.C. § 1144(b)(6)(A)(ii)).

2. MEWA-specific legislation

■ Plaintiffs assert that due process requires that the ERISA exception allowing state regulation of MEWAs only applies to state laws that specifically address MEWAs.

Title 29 U.S.C. § 1144(b)(6)(A)(ii) specifically provides that MEWAs are subject to *"any law"* of any State which regulates insurance." The MEWA exception nowhere limits the state to MEWA-specific laws. *See Wrotenbery,* 762 F.Supp. at 699 (MEWA subject to Texas' general (not MEWA-specific) insurance licensing law).

*Conclusion*

The record before the court is inadequate to determine whether or not the Atlantic plan is an employee welfare benefit plan. It appears (1) that employers did not establish the plan; (2) that they only minimally participate in the administration of the plan; and (3) that they are not linked by any common interest other than participation in the plan. However, insufficient evidence has been submitted to satisfactorily resolve the issue of whether ERISA is applicable to Atlantic.

However, even if Plaintiffs provide a covered employee benefit plan, it is a MEWA

---

**9.**  (i) is inapplicable as Atlantic is not fully insured.

which may be regulated by state laws not inconsistent with ERISA; a state licensing scheme is not inconsistent with ERISA. Obviously, if Atlantic is not covered by ERISA, it may be regulated by the Commonwealth.

Therefore, whether or not Atlantic is an employee benefit plan, the state's requirement that it obtain a license is not precluded by ERISA. Defendants' motion to dismiss Plaintiffs' complaint will be granted.