**ELCO MECHANICAL CONTRACTORS, INC., et al., Plaintiffs,**

v.

**BUILDERS SUPPLY ASSOCIATION OF WEST VIRGINIA, et al., Defendants.**

Civ. A. No. 2:93–0565.

United States District Court,
S.D. West Virginia.
Charleston Division.

Oct. 6, 1993.

[redacted]

---

James M. Sturgeon, Jr., David K. Schwirian, Pauley, Curry, Sturgeon & Vanderford, Charleston, WV, for plaintiffs.

James R. Watson, Steptoe & Johnson, Charleston, WV, for defendants Builders Supply Ass'n of West Virginia and Commercial Banking & Trust Co.

Thomas E. Scarr, Elizabeth D. Harter, Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for defendant Michael M. Albert.

J. Timothy Poore, Timothy Poore, Huntington, WV, for defendants Cent. Ben. Brokerage Agency of Kentucky, Inc. and J. Dale Morgan.

***MEMORANDUM OPINION AND ORDER***

HADEN, Chief Judge.

Pending is Plaintiffs' motion to remand. Defendant Builders Supply Association of West Virginia ("BSA") with the consent of all other Defendants removed this action from the Circuit Court of Kanawha County alleging Plaintiffs' claims are preempted by the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1001–1461. For reasons which follow, the Court **GRANTS** Plaintiffs' motion.

I.

Plaintiff ELCO Mechanical Contractors, Inc. ("ELCO"), a pipe fitting enterprise, has operated in and around Charleston, West Virginia for more than 20 years. BSA is a nonprofit trade association which has also existed for more than 20 years, whose membership includes construction industry employers.[1]

In 1988, a BSA representative contacted ELCO President Stephen Ellis and offered to sell ELCO health insurance for its employees of equivalent quality to the coverage the company then offered, but at lower rates.[2] Although Ellis had never heard of BSA at the time, he considered and accepted BSA's offer to insure ELCO's employees at lower cost.

To be eligible to purchase the insurance BSA offered, ELCO paid BSA membership dues of about $30 a year. The company received no benefits from its BSA membership except the less expensive insurance, and considered the nominal cost of its membership in BSA to be simply an additional health insurance fee. No ELCO representative ever had any dealings with BSA other than those surrounding the purchase of health insurance.

ELCO alleges BSA represented the health insurance it offered was underwritten by The Shores Group, Inc., and that BSA and the other Defendants acted as agents for the sale of the insurance. The Shores Group, Inc. was not licensed to sell insurance in any state, and was placed in receivership by the Insurance Commissioner of the State of Georgia on January 22, 1992. Two ELCO employees incurred significant medical bills during the period ELCO's policy was alleged to be effective.[3]

1. Little more about the precise nature of BSA's activities is evident from the parties' filings. It is unclear, for example, whether BSA's membership includes employers *exclusively* from the construction industry; also indistinct is the nature of benefits BSA provides to its membership besides health insurance coverage.

2. These facts are set forth in Stephen Ellis' affidavit, submitted by Plaintiffs in support of their motion to remand. Although Defendants have not conceded the accuracy of Ellis' averments, they have presented no affidavits or other materials to controvert them.

3. The estate of former ELCO employee Thomas F. Ellis, who died in July, 1992, seeks to recover approximately $37,000 in unpaid claims. ELCO employee Richard Larter asserts unpaid claims totalling $3,244.81.

Plaintiffs brought this action seeking recovery from Defendants on theories of negligence, misrepresentation, and violation of W.Va.Code §§ 33–12–21 [4] and 22 [5], which penalize and proscribe the placing of insurance with an insolvent or unlicensed insurer. Defendants removed the action to this Court, alleging Plaintiffs' claims relate to an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), and are therefore preempted. 29 U.S.C. § 1144.

## II.

ERISA's preemption clause provides generally that "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..." 29 U.S.C. § 1144(a) (1988). Congress included in ERISA this "deliberately expansive" preemption clause as an important component of its plan to create a comprehensive national scheme for the regulation of employee welfare benefit plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987); *Atlantic Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 3 (2d Cir.1993).

Congress however did not intend ERISA encroach upon states' power to regulate insurance, and included a saving clause limiting ERISA's scope: "[N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance ..." 29 U.S.C. § 1144(b)(2)(A). The saving clause is itself limited by a "deemer" clause, which provides no employee benefit plan or trust established

under such a plan "shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies ..." 29 U.S.C. § 1144(b)(2)(B).

While these provisions establish general parameters of ERISA preemption, they are inapplicable where the plan involved is a multiple employer welfare arrangement ("MEWA").[6] In 1983, Congress separately and specifically prescribed the authority of states to regulate MEWAs:

> Notwithstanding any other provision of this section—(i) in the case of an employee welfare benefit plan which is a multiple employer welfare arrangement and is fully insured ... any law of any State which regulates insurance may apply to such arrangement to the extent that such law provides—(I) standards, requiring the maintenance of specified levels of reserves and specified levels of contributions ... and (II) provisions to enforce such standards, and (ii) in the case of any employee welfare benefit plan which is a multiple employer welfare arrangement, in addition to this subchapter, any law of any State which regulates insurance may apply to the extent not inconsistent with the preceding sections of this subchapter.

29 U.S.C. § 1144(b)(6)(A). The MEWA clause is an exception to the deemer clause, and authorizes states to regulate MEWAs as insurance companies. *Googins*, 2 F.3d at 3.

The statutory definition of MEWA is broader than the definition of employee welfare benefit plan ("EWBP").[7] Only ME-

4. W.Va.Code § 33–12–21 provides, in relevant portion:

> Any agent or broker who participates directly or indirectly in effecting any insurance contract ... where the insurer is not licensed to transact insurance in this State, shall be personally liable upon such contract as though such agent or broker were the insurer thereof.

5. W.Va.Code § 33–12–22 provides: "No agent, broker or excess line broker shall knowingly place any coverage in an insolvent insurer."

6. ERISA defines MEWA as:

> [A]n employee welfare benefit plan, or any other arrangement (other than an employee

welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in [29 U.S.C. § 1002(1)] to the employees of two or more employers (including one or more self-employed individuals), or to their beneficiaries [except a plan established or maintained pursuant to a collective bargaining agreement, or by a rural electric or telephone cooperative].

29 U.S.C. § 1002(40)(A).

7. ERISA defines an EWBP as:

> [A]ny plan, fund, or program which was ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was

WAs that also constitute statutory EWBPs are governed by and regulated under ERISA. *MDPhysicians & Associates v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992). MEWAs which are also EWBPs qualify for limited preemption from certain state insurance regulations; the extent of the preemption depends on whether the MEWA is "fully insured." 29 U.S.C. § 1144(b)(6)(A). Non–EWBP MEWAs, however, are subject to state regulation. *MDPhysicians,* 957 F.2d at 181; *see Wisconsin Educ. Ass'n. Ins. Trust v. Iowa State Bd.,* 804 F.2d 1059, 1061 (8th Cir.1986).

### III.

■ The burden of proof on a motion to remand falls on the party seeking to preserve the removal, not the party moving for remand. *Her Majesty The Queen in Right of Province of Ontario v. City of Detroit,* 874 F.2d 332, 339 (6th Cir.1989); *Jones v. General Tire and Rubber Co.,* 541 F.2d 660, 664 (7th Cir.1976); *see generally* 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3739 (1985). Doubts about the propriety of removal should be resolved in favor of remand. *Charrier v. Bell,* 547 F.Supp. 580, 583 (D.C.La.1982); *Cf. Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941).

■ There exists no room for doubt the arrangement at issue in the instant case is a MEWA. The plan was established to provide health benefits to the employees of BSA's members. Whether the plan also constituted an EWBP is a question of fact. *MDPhysicians,* 957 F.2d at 182; *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 976 (5th Cir.1991).

An EWBP must be: (1) a "plan or fund or program"; (2) established or maintained; (3) by an employer or by an employee organization, or by both; (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death [and oth-

er benefits not relevant here]; (5) to participants and their beneficiaries. 29 U.S.C. § 1002(1); *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982); *Atlantic Healthcare Benefits v. Foster,* 809 F.Supp. 365, 371 (M.D.Pa.1992).

The Court will assume for purposes of this analysis the BSA arrangement satisfies three of these five criteria: it is (1) a plan (2) which provides the requisite benefits (3) to employees of participating employers. The remaining elements—whether an employer or employee organization established or maintained the plan at issue—provide the focus of the Court's inquiry.

The parties do not contend the BSA plan was established by an employee organization. Defendants, however, assert BSA falls within ERISA's definition of "employer": "any person acting directly as an employer, or *indirectly in the interest of an employer,* in relation to an employee benefit plan [including] a group or association of employers acting for an employer in such a capacity." 29 U.S.C. § 1002(5) (emphasis added).

BSA did not act directly as an employer to the employees who were beneficiaries of the plan. Nor does the record show employers established the plan. For ERISA to apply, the BSA plan therefore must be maintained by an employer group acting in the interest of the employers. *Foster,* 809 F.Supp. at 372.

■ A multi-employer plan is not within the ambit of ERISA if employers have no direct involvement in its administration. *Id.; Taggart Corp. v. Life Health Benefits Admin. Inc.,* 617 F.2d 1208, 1210 (5th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981); *Otto v. Variable Annuity Life Ins. Co.,* 814 F.2d 1127, 1135 (7th Cir.1986), *cert. denied,* 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988). The employer group must do more than merely advertise the plan and collect contributions; it must actively participate in the administration of the plan. *Bell v. Employee Sec. Ben.*

---

established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care

or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . .

*Ass'n,* 437 F.Supp. 382, 392–93 (D.C.Kan. 1977); *Matthew 25 Ministries, Inc. v. Corcoran,* 771 F.2d 21, 22 (2d Cir.1985).

■ Although Defendants assert BSA's members "have participated significantly in the establishment and maintenance of the plan," they describe or document no such participation.[8] The facts as set forth by the parties indicate ELCO and the other BSA members acted merely as a conduit for subscribers. *Taggart,* 617 F.2d at 1210. Clearly, ELCO and BSA's other members had no involvement in the day-to-day administration of the plan.

Also, Courts have held there must be some cohesive relationship between the provider of benefits and the recipient of benefits under the plan. The Eighth Circuit held the pertinent definitions require "that the entity that maintains the plan and the individuals that benefit from the plan [be] tied by a common economic or representation interest, *unrelated to the provision of benefits.*" *Wisconsin Educ. Ass'n Ins. Trust,* 804 F.2d at 1063 (emphasis added); *see also MDPhysicians,* 957 F.2d at 185; *Foster,* 809 F.Supp. at 373.

Though Defendants assert BSA members are linked by their general involvement in the construction trade, it nonetheless appears any such relationship between members was tied to the provision of benefits under the BSA plan. ELCO maintains it "is not and has never been in the construction or builders supply business," and "does not and has not participated in any other programs or received any other benefits from BSA other than the marketing of health insurance." ELCO asserts it "treated and viewed BSA as simply another health insurance agent marketing insurance products in the Charleston, West Virginia area."

The relationship between BSA and its members' employees appears to be much like that between a private insurance company and the beneficiaries of a group insurance plan. *Wisconsin Educ. Ass'n Ins. Trust,* 804 F.2d at 1063. Absent the protective nexus between BSA and its members' employees,

the Court cannot consider BSA a "group or association of employers" acting indirectly in the interest of its employer members. *MDPhysicians,* 957 F.2d at 186.

The Court has considered the remaining arguments set forth by the Defendants and finds they are without merit. The Defendants have failed to meet their burden of showing the BSA plan is subject to ERISA preemption. The Court concludes BSA did not constitute an "employer" within the meaning of 29 U.S.C. § 1002(5), and the BSA plan does not constitute an EWBP under 29 U.S.C. § 1002(1). As a non-EWBP MEWA, the BSA plan is subject to state regulation. Accordingly, the Court concludes this case was improvidently removed, and **ORDERS** the action remanded to the Circuit Court of Kanawha County for further proceedings.

---

**8.** As well, Defendants apparently concede ELCO did not participate in the establishment or maintenance of the BSA plan, arguing without authority ELCO's participation in the establishment and maintenance of the plan is unnecessary if other group members participated.